WILLIAM GOULD, JR., AND OTHERS *vs.* DAVID BANKS AND ANOTHER.

The act of 1882 (Session Laws 1882, p. 137) provides that the reports of the decisions of the Supreme Court of the state shall thereafter "be published by the state, under the supervision of the comptroller, who shall cause the volumes to be stereotyped, and copyrighted in the name of the secretary of the state." The comptroller made a contract with Banks & Brothers for the printing and selling by them at a price named of the next five volumes, the contract providing that they

should take out a copyright on each volume in the name of the secretary for the benefit of the state, and that the volumes should be stereotyped, the plates to belong to the state and Banks & Brothers to have the exclusive right to print from them. Before the contract had expired certain publishers of weekly law magazines applied to the court for an order that the reporter should furnish them copies of all opinions as they were filed with him, on their request and payment therefor, for immediate publication in their magazines. Motion denied, on the ground that it would be a violation of the rights of Banks & Brothers under their contract.

The judges and the reporter being paid by the state, the product of their mental labor is the property of the state, and the state has power to take for itself a copyright of it, and it is for the state to say when and in what manner the decisions of the court shall be published.

The taking of the copyright does not offend the rule that judicial proceedings shall be public. The courts and their records are open to all. The reasons given by the judges for their determination in a particular case constitute no part of the record therein ; and these are accessible to all who desire to use them in the enforcement of their rights.

[Argued December 29th, 1885—decided February 12th, 1886.]

APPLICATION to this court, made informally by agreement of the parties and by consent of the court, for an order that the reporter of the court should furnish to the applicants, at their request and at their expense, copies of all opinions of the court as they should be filed with him, to be printed in certain weekly law magazines published by them.

The applicants were William Gould, Jr., & Co. of Albany, N. York, publishers of The Eastern Reporter; The Lawyers' Co-operative Publishing Company of Rochester, N. York, publishers of The New England Reporter; and The West Publishing Company of St. Paul, Minnesota, publishers of the North Eastern Reporter. Banks & Brothers, law publishers of the city of New York, opposed the motion on the ground that they were entitled to the exclusive publication of the opinions of the court under their contract with the state.

Previous to the passage of the act of 1882 the reporter had published the reports in his own name and for his own benefit. In that year an act was passed (Session Laws of 1882, p. 137,) which provided as follows:—" After the

forty-eighth volume, now in press, the reports shall be published by the state, under the supervision of the comptroller, who shall cause the volumes to be stereotyped, and to be copyrighted in the name of the secretary, for the benefit of the people of the state."

Under this act the comptroller, on the 7th day of September, 1882, made a contract with Banks & Brothers, of which the following are the parts important to the present case.

"The party of the second part is to have the printing and sale of, and is to print and sell, the next five volumes of the Connecticut Law Reports, commencing with volume forty-nine, upon the following terms and conditions:— * * *

"2. The volumes are to be stereotyped. The plates are to belong to the state, but are to be stored by Banks & Brothers and to be kept by them well insured for the benefit of the state. Banks & Brothers are to have the exclusive right to print from the plates, so long as this contract is observed by them, and are to replace them if destroyed or defaced (beyond ordinary wear) in use, being entitled to the insurance money for that purpose if they are destroyed by fire. The state is however to have the right to demand the custody of the plates if it desires. * * *

"3. A copyright of each volume is to be taken out by Banks & Brothers, and at their expense, in the name of the secretary of the state, and is to belong to the state. The copyright papers are to be sent to the comptroller. The copyright is not to be used by the state in any way adversely to Banks & Brothers so long as they keep this contract. The title page of each volume is to state that the volume is published for the State of Connecticut by Banks & Brothers. * * * "

"7. The copies of each volume are to be retailed in the market by Banks & Brothers at two dollars per copy, and to be furnished to the trade at one dollar and seventy-five cents per copy; and they are to keep the market always supplied with the volumes and at those prices."

It was agreed by the parties to the present application

VOL. LIII—27

that Banks & Brothers, who issued these volumes in quarterly parts called "Advance Sheets," had received many orders for these parts, but that when the prospectuses of these new periodicals appeared, many of the orders were countermanded, and that the sale of them and of the bound volumes had seriously diminished. Also that the value of their contract consisted in the exclusive right of publication.

It was also agreed that the applicants had requested the reporter to furnish them copies of the opinions, but that he had declined to do so unless directed by the court.

*L. E. Stanton* and *H. S. Stearns*, for the applicants, contended that opinions of the courts were not the subject of copyright, (*Wheaton* v. *Peters*, 8 Pet., 591; *Banks* v. *Manchester*, 23 Fed. Rep., 143); that the act of 1882 did not authorize the comptroller to make a contract giving the publisher a right to the exclusive control of the opinions; that, if it did so authorize him, the contract made had not in fact given Banks & Brothers that exclusive right; and that the early publication of the opinions, in the less expensive manner proposed by the applicants, would be greatly for the public interest.

*C. E. Gross*, for Banks & Brothers, conceded that a reporter would have no such property in the opinions of the court that he could obtain a valid copyright for them, but contended that, the judges and the reporter being paid by the state, the product of their labor belonged to the state, and that this ownership was all that was necessary to enable the state to obtain a valid copyright, (Drone on Copyright, 161, 255); that the state, in passing the act of 1882, had intended to secure the protection of this property by a copyright; that the comptroller had power under the statute to make the contract with Banks & Brothers; that that contract gave them the benefit of the copyright and necessarily, as well as in terms, the exclusive right of publication; and that the advance publication of the opinions by the applicants would not only be a serious injury to Banks

Gould *v.* Banks.

& Brothers under their contract, but a loss to the state of the benefit of its copyright and make it liable to Banks & Brothers for damages.

PARDEE, J. For the information of the public the state of Connecticut publishes reports of cases argued and determined in the Supreme Court of Errors. The volume is prepared for publication by the official reporter, and contains the opinions written by the judges, together with head-notes to all cases, foot-notes to some of them, statements of facts, a table of cases, and an index to subjects, the work of the reporter. The judges and the reporter are paid by the state, and the product of their mental labor is the property of the state, and the state, as it might lawfully do, has taken to itself the copyright. The statute requires the comptroller to supervise the publication of the volumes, taking a copyright for the benefit of the state. Under this statute that officer for a valuable consideration granted to Banks & Brothers, who agree to print and sell the reports at a fixed price, the protection of the copyright for a limited period. During three or four years the state, with knowledge, has acquiesced in the terms of this contract and accepted the resulting benefits. If, therefore, we should now direct the reporter to furnish copies of opinions to the petitioners, that they may sell them to the public, in advance, for their own profit, we should in effect advise the state to a breach of contract.

It is for the state to say when and in what manner it will publish these volumes; and the taking of the copyright in no sense offends the rule that judicial proceedings shall be public. The courts and their records are open to all. The reasons given by the Supreme Court of Errors for its determination in a given cause constitute no part of the record therein; the judgment stands independently of these. Moreover, these are accessible to all who desire to use them in the enforcement of their rights.

The application for an order that the reporter furnish copies of all opinions to the petitioners is denied.

In this opinion the other judges concurred.