EPAPHRODITUS PECK *vs.* JOHN HOOKER, REPORTER.

Hartford Dist., Jan. T., 1892. CARPENTER, SEYMOUR, TORRANCE, FENN and ROBINSON, Js.

It is provided by Gen. Statutes, § 333, that the reports of the decisions of the Supreme Court of Errors, " shall, when prepared by the reporter of judicial decisions and ready for publication, be published under the supervision of the comptroller, who shall cause the several volumes to be stereotyped and to be copyrighted in the name of the secretary for the benefit of the people of the state." Another statute provided for the reporter's salary and fixed the price to be paid him for copies of opinions called for. Upon an application for a mandamus to compel the reporter to furnish, upon a tender of the fee allowed, copies of all opinions for publication in a weekly magazine in advance of their official publication, or to .be allowed to make copies for the purpose, it was held that, independently of all questions of copyright, the state had the right to direct as to the publication of the reports, and having directed that they should be published under the supervision of the comptroller when ready for publication, the applicant had no right to copies for earlier publication.

[Argued January 7th—decided February 29th, 1892.]

APPLICATION for a mandamus; brought to the Superior Court in Hartford County. The defendant demurred to the complaint, and the court sustained the demurrer and rendered judgment for the defendant. The plaintiff appealed. The case is fully stated in the opinion.

*E. Peck*, appellant, *pro se.*

1. It seems necessary first to consider the authority of the case of *Gould* v. *Banks*, 53 Conn., 415. In that case the judges informally considered, and refused, an application by certain foreign publishers for copies of the opinions. The prevailing brief and the opinion of the court rely upon two facts:— 1st., the statute of 1882, and the state's copyright taken in accordance therewith; and 2d., the contract made by the comptroller with Banks & Brothers for the publication of the volumes. Neither of these controlling facts exists in the case at bar. The court say :—" The judges and the re-

porter are paid by the state and the product of their mental labor is the property of the state, and the state, as it might lawfully do, has taken to itself the copyright." But this fundamental support of their conclusion has been entirely removed by the Supreme Court of the United States in *Banks* v. *Manchester*, 128 U. S. R., 244. By that decision the supposed copyright in the state has ceased to exist. Its effect is not that of a contrary authority on a point of law. It determines and establishes the fact of the non-existence of copyright in judicial opinions under the federal law, and so makes a change of the facts as radical as if Congress had repealed the copyright law itself. So much of the General Statutes as provides for the taking of a copyright has also become ineffectual, so far as it concerns the opinions, and although the comptroller may still properly copyright the reports, which include much reporter's work, the opinions have become free from any legal monopoly—free to all the world to read, copy and publish. And the contract with Banks & Brothers, so much relied on in *Gould* v. *Banks*, is not an issue in this case. Even if the present facts and the issues made permitted *Gould* v. *Banks* to be cited as an existing precedent, we should confidently ask the court to reconsider it, in view of the later adjudications, which have unanimously denied its correctness, and by which Connecticut has been left in the unenviable position of being the only state of the Union which permits a monopoly, for a publisher's profit, of the knowledge of the law. Only three months after that decision the Supreme Court of Massachusetts decided the other way on exactly similar facts, though that case was relied upon as an authority. *Nash* v. *Lathrop*, 142 Mass., 29. A month later Justice BREWER, in the U. S. Circuit Court for the district of Minnesota, declined to follow *Gould* v. *Banks*. *Banks* v. *West Pub. Co.*, 27 Fed. Rep., 50. The Supreme Court of Iowa also refused to sustain a monopoly in the opinions of their judges, though the statute and contract made thereunder gave the exclusive rights claimed in the strongest terms. No opinion was rendered, and the case is not reported. In 1888 the Circuit Court for

this district refused to enjoin Gould & Co. from publishing the Connecticut opinions in defiance of *Gould* v. *Banks.* Judge WALLACE'S opinion very clearly shows his disapproval of that case, and the decision was a practical nullification of it. *State of Connecticut* v. *Gould,* 34 Fed. Rep., 319. See also *Banks* v. *Manchester,* 23 Fed. Rep., 143 ; *S. C.,* 128 U. S. R., 244 ; *Davidson* v. *Wheelock,* 27 Fed. Rep., 61 ; *Little* v. *Gould,* 2 Blatchf., 165 ; *Chase* v. *Sanborn,* 4 Cliff., 306 ; *Myers* v. *Callaghan,* 5 Fed. Rep., 733 ; *S. C.,* 20 id., 442 ; *S. C.,* 128 U. S. R., 617.

2. Is there any right of *first publication* in the state " whose servant the defendant is? " Such a right is in derogation of the common right of the citizen and should be clearly made out. " The decisions and opinions of the justices are the authorized expositions and interpretations of the laws, which are binding upon all citizens. They declare the unwritten law, and construe and declare the meaning of the statutes. Every citizen is presumed to know the law thus declared, and it takes no argument to show that justice requires that all should have free access to the opinions; and that it is against sound public policy to prevent this, or to suppress and keep from the earliest knowledge of the public the statutes, or the decisions and opinions of the justices. Such opinions stand, upon principle, on substantially the same footing as the statutes enacted by the legislature." *Nash* v. *Lathrop,* 142 Mass., 29. See also *Banks* v. *Manchester,* 128 U. S. R., 244; *Banks* v. *West Pub. Co.,* 27 Fed. Rep., 50 ; *Connecticut* v. *Gould,* 34 id., 339. Our legislature carefully provides that the statutes passed by them shall not take effect till there has been time for the printed pamphlets to circulate throughout the state. It is no less a violation of public right that the opinions of this court, filed to-day, and immediately becoming the established law of the state, should be refused publication till the slow processes of official publication are completed. Monopoly of a material commodity is abhorrent to the Anglo-Saxon mind; how much more monopoly of the law, which every citizen is bound at his peril to know. I repeat, then, the existence

of this right of *prior* publication, the prohibition of publication until after the state has officially published, should be clearly made out by positive provisions of law.    No such provision exists unless in § 333 of the General Statutes, which is as follows :—" The reports of the cases hereafter argued and determined in the Supreme Court of Errors shall, when prepared by the reporter of judicial decisions and ready for publication, be published under the supervision of the comptroller, who shall cause the several volumes to be stereotyped and to be copyrighted in the name of the secretary for the benefit of the people of this state."    The reports so " prepared and published " are the reports provided for by § 825, which by long practice include tables of cases, syllabi, statements of fact, condensed briefs, and indexes, all the work of the reporter, and the judicial opinions.    The provision for copyright having ceased to apply to the opinions, can the court now construe these acts as providing for a copyright of the reporter's work, and a right of first publication of opinions ?    Because the copyright which the legislature intended to create has ceased to exist, can a less monopoly, that the legislature did not intend to create, be supplied by implication ?    The real situation is that stated in *Callaghan* v. *Myers*, 128 U. S. R., 617 ; the copyright still exists as to the reporter's work, the book of reports as a whole is to be published by the state, and placed in every town clerk's office for the public use ; but the opinions, from the moment of their filing, are free to all the world to inspect, to study, and to publish.    The statute fixing the reporter's salary contains the following clause :  " and at the rate of twenty-five cents a page for any copy, to be paid by the party requiring it." Gen. Statutes, § 3709.    Any party who requires it has therefore a right to a copy on payment of the prescribed fee.    If it were not the official duty of the reporter to furnish copies, would the statute have defined the fee to which he should be limited, and declared that fee to be a part of his official compensation ?    If it is not his duty, but a voluntary service, to furnish copies, he has the right to charge whatever he will for the performance of that service.

3. As to the dictum in *Gould* v. *Banks*, that "the courts and their records are open to all; the reasons given by the Supreme Court of Errors for its determination in a given case constitute no part of the record therein; the judgment stands independently of these." The plaintiff contends that if not a record of the case in a strict technical sense, the opinion is a public document, prepared by public officials in the discharge of their public duty, for the information of the public, which is in the custody of the defendant as a public officer, and a knowledge of which deeply concerns the plaintiff. It is conceded that the plaintiff has a right, in common with every citizen, to inspect the records of the courts; that is, the respective allegations and claims, and the judgment of the court, in any cause now pending or adjudged. How much more vital it is to his interest, and to his rights as a citizen, to see the judicial opinion, which establishes the law for himself, and which is required by law to be prepared for the public information. The former have no interest, except in the way of curiosity, to any but the parties to the cause; the latter belong to, and concern, every citizen as much as the litigants.

*C. E. Gross*, for the appellees.

SEYMOUR J. The plaintiff in this case claims that the Superior Court should issue a writ of mandamus to compel the reporter of the judicial decisions of the Supreme Court of Errors to permit him, at all reasonable times, and when it will not interfere with his use of the same in his official duties, to make copies of any opinions of said last mentioned court in his custody, or furnish him certified copies thereof, at the usual and reasonable rates of compensation therefor, for publication out of the state, in advance of their official publication by the state.

The statute regulating the appointment and duties of the reporter is section 825 of the General Statutes:—"The judges of the Supreme Court of Errors shall, from time to time, appoint a reporter of its judicial decisions. He shall

make reports of the cases argued and determined in said court, and prepare the same for publication; and it shall be his duty to insert after the syllabus of each case the date of the argument and the date of the decision."

Section 333 requires that "the reports of the cases hereafter argued and determined in the Supreme Court of Errors, shall, when prepared by the reporter of judicial decisions and ready for publication, be published under the supervision of the comptroller, who shall cause the several volumes to be stereotyped and to be copy-righted in the name of the secretary for the benefit of the people of the state."

Section 3709, fixing the salaries and fees of certain officers, provides for "the reporter of judicial decisions, three thousand dollars, with one thousand dollars additional thereto during the occupancy of the present reporter, and at the rate of twenty-five cents a page for any copy, to be paid by the party requiring it."

If the plaintiff is entitled to a mandamus it is because there is something in the above quoted sections of the statute which makes it the duty of the reporter, upon request, to make for him, upon payment therefor, or permit him to make, copies of the written and unpublished opinions in his custody, that they may be published in advance of their publication by the state under the supervision of the comptroller.

Do the statutes, either directly or by implication, impose any such duty upon the defendant?

The state has seen fit to provide that the reports of the cases argued and determined in the Supreme Court of Errors shall, when prepared by the reporter and ready for publication, be published under the supervision of the comptroller. It has made it the reporter's duty to prepare the reports for publication. Will the courts of the state, which thus provides for controlling the publication of the reports of its court of last resort, compel the reporter to furnish for outside advance publication the unpublished opinions of that court, which the law requires him to prepare for publication

in the manner by statute prescribed " for the benefit of the people of this state ? "

It is argued that the statute giving the reporter a fixed salary, " and at the rate of twenty-five cents a page for any copy, to be paid by the party requiring it," imposes upon him the official duty of furnishing copies upon demand and tender of payment for any purpose whatever, including advance outside publication. This is an attempt to extend a statute by implication beyond any reasonable limits. Indeed, it seems to us that in view of the clearly expressed design of the state to control the publication of its judicial reports, a reporter would be blameworthy who should knowingly aid in defeating that design by furnishing opinions to other parties for advance publication.

It was not without good reasons that our statutes on this subject were passed. It is of public concern that the judicial reports should not be published until they are " prepared by the reporter and ready for publication." Until that time the opinion as well as the statement of the case and the syllabus, ought to be open for any correction that may be necessary for the proper understanding of the case. Until that time they cannot be relied on as necessarily expressing the final voice of the court and therefore as entitled to be published.

At any rate, it cannot be the duty of the reporter, directly or indirectly, to contravene the policy of the state in this behalf—a policy which it is not claimed has ever prevented any one from obtaining a copy of any judicial opinion as soon as filed, who wanted it for his information or to gratify his curiosity, and which has helped to secure the accuracy of the published reports.

We might have contented ourselves with simply referring to the case of *Gould* v. *Banks*, 53 Conn., 415, and holding that case as deciding this. For, if it is true, as contended by the plaintiff, that the Supreme Court of the United States, in *Banks* v. *Manchester*, 128 U. S. R., 244, have decided that no copyright can be had in judicial opinions, yet it still remains true that it is for the state to say when and in what

manner the decisions of its courts shall be published. But the present case is an interesting one. The effort to expedite the publication of judicial opinions is commendable. Absolute accuracy is however much more important than mere celerity, and it needs only an examination of our statutes and a careful consideration of the policy upon which they are founded, to show that the defendant was justified in refusing the demand of the plaintiff upon which the application for the writ is predicated.

The demurrer was properly sustained and there is no error in the judgment.

In this opinion the other judges concurred.