**BUILDING OFFICIALS & CODE ADM.,
Plaintiff, Appellee,**

v.

**CODE TECHNOLOGY, INC.,
Defendant, Appellant.**

**No. 80–1124.**

United States Court of Appeals,
First Circuit.

Argued June 5, 1980.

Decided Aug. 27, 1980.

---

Morton David Goldberg, New York City, with whom Richard Dannay and Schwab, Goldberg, Price & Dannay, New York City, were on brief, for defendant, appellant.

Richard L. Stevens, Boston, Mass., with whom Thompson, Birch, Gauthier & Samuels, Boston, Mass., Joseph A. Murphy, and Ancel, Glink, Diamond & Murphy, P. C., Chicago, Ill., were on brief, for plaintiff, appellee.

Ronald C. Allan and Buckingham, Doolittle & Burroughs Co., LPA, Akron, Ohio, on brief for Banks–Baldwin Law Pub. Co., amicus curiae.

Before CAMPBELL and BOWNES, Circuit Judges, and BOYLE,[*] District Judge.

LEVIN H. CAMPBELL, Circuit Judge.

This appeal under 28 U.S.C. § 1292 is from an interlocutory order of the district court granting a preliminary injunction. The effect of the injunction is to prevent the defendant–appellant, Code Technology, Inc. (CT) from publishing and selling to the public, pendente lite, CT's own edition of the Massachusetts building code, a set of administrative regulations of the Commonwealth of Massachusetts based in large part on a model code of which the plaintiff-appellee, Building Officials and Code Administrators International, Inc. (BOCA), claims copyright protection.[1] For the reasons stated below, we vacate the injunction.

I.

The district court granted preliminary relief after hearing oral argument and receiving briefs and documentary evidence addressed to BOCA's motion for preliminary injunction.

In that proceeding the following facts emerged: BOCA, a non–profit organization, has allegedly been involved in the development and publishing of a so–called BOCA BASIC BUILDING CODE for over

---

[*] Of the District of Rhode Island, sitting by designation.

1. The injunctive order reads as follows:

"In accordance with the findings I have just dictated, it is ordered that the Defendant Code Technology, Inc., its agents, servants and employees and all persons in active concert with it are enjoined pending a final hearing and determination of this action from publishing, printing, vending, distributing, or copying in any form, whatsoever, a publication based on Plaintiff's copyrighted book, A Basic Building Code/1978."

28 years. This model code is said to have been developed, principally with private monies, through the joint efforts of representatives from industry, code enforcement officials, design professionals and other interested parties; it is continually being updated; and it is used throughout the United States and Canada by state and local jurisdictions. According to BOCA, it has copyrighted its code, and in particular BOCA says it holds a copyright for its publication THE BOCA BASIC BUILDING CODE/1978 (the BOCA CODE), which defendant CT has allegedly infringed. BOCA says that after having secured a copyright, it encourages, through a licensing program, public authorities such as states to adopt the BOCA CODE, by reference, in whole or in part.

Pursuant to a license granted by BOCA, the Commonwealth of Massachusetts has adopted and distributed a building code based in substantial part on the BOCA CODE. This officially promulgated state regulation is known as the COMMONWEALTH OF MASSACHUSETTS STATE BUILDING CODE (Massachusetts building code) and, besides the BOCA CODE material, contains certain additions, deletions and revisions peculiar to Massachusetts. However, the district court found that these latter materials were relatively minor, and that the Massachusetts building code was in substantial measure taken from and based upon the BOCA CODE.

It appears that after the Massachusetts building code was adopted by the state, certain official copies thereof were maintained in the Secretary of State's office as required by law, and BOCA took responsibility for publishing and distributing for sale a book, entitled the *Commonwealth of Massachusetts State Building Code, 3rd Ed.*, which embodied the Massachusetts building code. This BOCA-published volume carried a notice to the effect that substantial portions were taken, by permission, from copyrighted material owned by BOCA. Its sale price was $22 a volume. Massachusetts officials made a practice of referring to BOCA any persons interested in obtaining a copy of the Massachusetts building code for their own use.

Defendant–appellant CT came on the scene when it copied and published its own edition of the Massachusetts building code. It neither sought nor obtained BOCA's permission to do so, nor in its book did CT mention BOCA's claim of copyright with respect to materials underlying the Massachusetts building code. Calling the book *State Building Code of the Commonwealth of Massachusetts*, CT offered it for sale at $35 a copy. The CT edition included certain Massachusetts building regulations in addition to those embodied in the BOCA-published version of the Massachusetts building code, but otherwise CT's edition set forth the same materials. BOCA copied its text from an official copy of the Massachusetts building code maintained in the State Secretary's office. Nonetheless, the district court specifically ruled,

"I find there is no merit to the argument that the copy was not of . . . the BOCA book, but actually the State Building Code when the BOCA Building Code is reproduced in the State Building Code from which the copy was made.

"Accordingly, a preliminary injunction will issue."

The district court did not directly address the question which we consider dispositive here, namely, whether inclusion of the BOCA–created materials, with BOCA's permission, in the official Massachusetts regulations, would have the effect of rendering the BOCA materials, like the rest of the Massachusetts building code, freely available for copying by anyone, notwithstanding BOCA's copyright.

II.

■ We do not agree with the district court's conclusion that BOCA's probability of success on the merits justifies preliminary relief. We stop short, however, of ruling definitely on the underlying legal issues, since we feel that our final judgment should await the more complete hearing on the merits which may be anticipated in due course.

CT's chief ground of defense is its argument that the BOCA CODE, insofar as it has been adopted by the state as a set of administrative regulations having the force of law, has lost its copyright protection and entered the public domain.[2] CT cites a line of cases, dating as far back as 1834, which hold that judicial opinions and statutes are in the public domain and therefore are not subject to copyright protection. CT argues that this rule should be extended to cover administrative regulations such as the Massachusetts building code, since these regulations have the force of law and are enforced by penal sanctions.

BOCA acknowledges the rule that judicial opinions and statutes are in the public domain, but it urges us not to apply the rule to its building code as adopted by Massachusetts on the ground that, unlike the opinions and statutes considered in the cited cases, the code was authored by a private organization at its own expense rather than by government officials. To evaluate these competing contentions, it is necessary to examine the cases which have established the rule and to try to identify the policies on which it is based.

The rule was first enunciated in *Wheaton v. Peters*, 33 U.S. 591 (8 Peters), 8 L.Ed. 1055 (1834). In an action for infringement of a copyright on Wheaton's volumes of Supreme Court opinions, the Court observed,

"The Court are unanimously of the opinion, that no reporter has or can have any copyright in the written opinions delivered by this Court; and that the judges thereof cannot confer on any reporter any such right."

*Id.*, at 668, 8 L.Ed. 1055. The Court did not express its reasoning underlying this observation. However, subsequent cases explain and expand the rule.

In *Banks v. Manchester*, 128 U.S. 244, 9 S.Ct. 36, 32 L.Ed. 425 (1888), the Supreme Court held invalid an Ohio law which authorized the official reporter for the Ohio Supreme Court to obtain, in his own name, a copyright on the opinions of the Ohio Supreme Court. The Court reasoned that the reporter could not claim authorship of the opinions, and that the state was not a "citizen or resident" under the copyright law and therefore could not obtain a copyright for itself, even though as the employer of the judges it held property rights in the opinions. The Court stated,

"The whole work done by judges constitutes the authentic exposition and interpretation of the law, which, binding every citizen, is free for publication to all, whether it is a declaration of unwritten law, or an interpretation of a constitution or a statute."

*Id.*, at 253, 9 S.Ct. at 40.

In *Nash v. Lathrop*, 142 Mass. 29, 6 N.E. 559 (1886), the Massachusetts Supreme Judicial Court followed these precedents in interpreting a contract between the Commonwealth and Little Brown Publishing Company which was claimed to give Little Brown the exclusive right to publish opinions of the SJC. In ordering the reporter of decisions to permit a competing publisher to examine and copy the opinion, the court articulated the policies underlying the rule:

"Every citizen is presumed to know the law thus declared, and it needs no argument to show that justice requires that all should have free access to the opinions, and that it is against sound public policy to prevent this, or to suppress and keep from the earliest knowledge of the public the statutes or the decisions and opinions of the justices."

*Id.*, 6 N.E. at 560. The court observed that, for the same reasons, a legislature could not constitutionally keep statutes out of public access although it could regulate the manner of publication so as to insure accuracy.

In *Gould v. Banks*, 53 Conn. 415, 2 A. 886 (1886), the Connecticut Supreme Court addressed a nearly identical fact situation and reached the opposite conclusion. The U. S. Circuit Court for the Northern District of

---

2. CT also asserts that BOCA's copyright is invalid because of lack of authorship, misrepresentations to the copyright office, and other defects. We express no opinion on these other matters; they remain open for consideration by the district court at the hearing on the merits.

New York, however, refused to enforce the copyright which the Connecticut Supreme Court had thus upheld. *Connecticut v. Gould*, 34 F. 319 (1888). *See also Banks v. West*, 27 F. 50 (C.C.D.Minn.1886).

In *Davidson v. Wheelock*, 27 F. 61 (1866), the U. S. Circuit Court for the District of Minnesota rejected a claimed contractual grant of an exclusive right to publish the constitution and statutes of Minnesota. The court held that, although the reporter could obtain a valid copyright on his compilation and analysis, anyone could freely copy the laws themselves. In *Howell v. Miller*, 91 F. 129 (1898), the Sixth Circuit reached the same conclusion with regard to the statutes of Michigan.

The law thus seems clear that judicial opinions and statutes are in the public domain and are not subject to copyright. The question is whether this principle likewise covers state–promulgated administrative regulations which are modelled on a privately developed [3] code that was copyrighted by the service–oriented organization responsible for its creation and updating. The issue appears to be one of first impression at the circuit level; no cases have been cited to us concerning copyrightability of administrative regulations or of model codes or uniform codes.[4]

BOCA argues that the Massachusetts building code, unlike judicial opinions and statutes, is principally the work not of government employees, but of itself–a private organization operating with little or no government support which serves the needs both of the state and its citizens by preparing and updating the code, and furnishing copies as needed. BOCA's argument implies that the rule of *Wheaton v. Peters* was based on the public's property interest in work produced by legislators and judges, who are, of course, government employees. This interpretation of the cases is not with-out foundation; there is language in some of them that emphasizes the inconsistency of private ownership of the law with its creation under government sponsorship. *See, e. g., Banks v. Manchester*, 128 U.S. 244, 9 S.Ct. 36, 32 L.Ed. 425 (1888); *Banks v. West*, 27 F. 50 (C.C.D.Minn.1886).

But BOCA's argument overlooks another aspect of the ownership theory discussed in these cases. The cases hold that the public owns the law not just because it usually pays the salaries of those who draft legislation, but also because, in the language of *Banks v. West*, 27 F. 50, 57 (C.C.D.Minn. 1886), "Each citizen is a ruler,–a law–maker." The citizens are the authors of the law, and therefore its owners, regardless of who actually drafts the provisions, because the law derives its authority from the consent of the public, expressed through the democratic process.

Along with this metaphorical concept of citizen authorship, the cases go on to emphasize the very important and practical policy that citizens must have free access to the laws which govern them. This policy is, at bottom, based on the concept of due process. Regulations such as the Massachusetts building code have the effect of law and carry sanctions of fine and imprisonment for violations, *e. g.*, Mass.G.L. c. 23B § 17(a), ¶ 3. Due process requires people to have notice of what the law requires of them so that they may obey it and avoid its sanctions. So long as the law is generally available for the public to examine, then everyone may be considered to have constructive notice of it; any failure to gain actual notice results from simple lack of diligence. But if access to the law is limited, then the people will or may be unable to learn of its requirements and may be thereby deprived of the notice to which due process entitles them. CT points out that

---

3. The parties here dispute the amount of public funding involved in the development of the code.

4. We have found no discussion of the issue in secondary authorities either, although some authorities assume, without discussion, that regulations are treated exactly like statutes and opinions. *See* 1973 Op.N.Y.Atty.Gen. 38; 1958 Op.N.Y.Atty.Gen. 189; Ringer & Flacks, *Applicability of the Universal Copyright Convention to Certain Works in the Public Domain in their Country of Origin*, 27 BULLETIN OF THE COPYRIGHT SOCIETY 157, 158 n.2 (1980).

the holder of a copyright has the right to refuse to publish the copyrighted material at all and may prevent anyone else from doing so, thereby preventing any public access to the material. *Fox Film Corp. v. Doyal*, 286 U.S. 123, 52 S.Ct. 546, 76 L.Ed. 1010 (1932). We cannot see how this aspect of copyright protection can be squared with the right of the public to know the law to which it is subject.

We are, therefore, far from persuaded that BOCA's virtual authorship of the Massachusetts building code entitles it to enforce a copyright monopoly over when, where, and how the Massachusetts building code is to be reproduced and made publicly available. While we do not rule finally on the question, we cannot say with any confidence that the same policies applicable to statutes and judicial opinions may not apply equally to regulations of this nature.

### III.

We comment briefly upon two companion arguments made by BOCA in favor of its purported right to enjoin CT from publishing an edition of the Massachusetts building code. First, BOCA argues that under 17 U.S.C. § 301, the Federal Copyright Act preempts all state action which would interfere with federal copyright protection. Second, BOCA argues that under section 8 of the Federal Copyright Act of 1909 (now replaced by 17 U.S.C. § 105) the federal government explicitly disclaims any abridgement of copyright protection by its own publication of copyrighted material. BOCA argues that, by analogy, a state's use of copyrighted material cannot affect its copyright protection.

■ BOCA's preemption argument is to no avail. While we may accept for present purposes BOCA's assertion that section 301 would preempt any state laws abridging federal copyright protection, section 301 is irrelevant here, since the rule of *Wheaton v. Peters* and the other federal cases discussed *supra* is federal law arising from a judicial gloss upon the Federal Copyright Act. CT's argument is not that state adoption of the BOCA CODE destroyed BOCA's copyright

by operation of state law, but rather that the action triggered application of a doctrine of federal law under which BOCA's material, to the extent embodied in the state regulation, lost its copyright protection and became part of the public domain.

■ BOCA's other argument, based on section 8 of the old copyright Act, reflects a misunderstanding of the purpose of that provision. Section 8 of the old Act and section 105 of the new Act were both intended to place in the public domain all materials created by U. S. government employees as part of their official duties; such materials are barred from copyright protection so that they may be available to the public without restriction. While the new statute uses the limited phrase "work of the United States government," and defines that phrase in section 101, the old statute referred, without definition, to "any publication of the United States government." This ambiguous phrase created the danger that privately written and copyrighted works would lose protection simply by inclusion in a government publication. A saving clause was therefore added to clarify that this result was not intended, and it is on this saving clause that BOCA relies. Although the saving clause was not included in the new Act, the House Judiciary Committee indicated in its report that no change in this aspect of the law was intended, and that "publication or other use by the Government of a private work would not affect its copyright protection in any way." House Rep. No. 94–1476, U.S.Code Cong. & Admin. News 1978, excerpted at 17 U.S.C.A. § 105 (p. 96–97).

Adoption of copyrighted material into law is clearly distinguishable from mere publication by the government, since the due process considerations discussed above apply only to laws, not to publications of the government. Moreover, section 105 of the new statute, and section 8 of the old statute apply by their terms only to the federal government, not to the state governments. Works of state governments are therefore left available for copyright protection by the state or the individual

author, depending on state law and policy, and "subject to exceptions dictated by public policy with respect to such publications as statutes and judicial opinions." Latman, The Copyright Law 43 (5th ed. 1979). Thus, section 105 of the Federal Copyright Act, and its predecessor section 8 of the old Act, do not protect BOCA's material against the loss of its copyright protection through adoption as state law.

IV.

While we thus reject BOCA's two statutory arguments, *see* Part III, above, we leave the door slightly ajar with respect to the broader issue discussed in Part II, above. As to that issue, it is enough to say that, for purposes of preliminary relief, BOCA has not demonstrated a sufficient probability that it will succeed in distinguishing the BOCA CODE materials promulgated by Massachusetts in its building code from statutes and judicial opinions which, under existing law, may not receive copyright protection, *see* Part II, above.

Normally—even in an appeal from a preliminary injunction—we would expect to rule finally on such a "legal" issue. *See, e. g., Natural Resources Defense Council v. Morton,* 458 F.2d 827 (D.C.Cir.1972). We think it inadvisable to do so here, however. In the lower court, the parties dealt but briefly with the matter, and the district court itself did not allude to it in its dictated opinion. The question is not only of first impression but may be of importance in view of a possible trend towards state and federal adoption, either by means of incorporation by reference or otherwise, of model codes. *See* 29 C.F.R. 1910, 308–309, adopting as a federal regulation the *National Electrical Code*, a copyrighted code similar to the BOCA CODE. While it is hard to see how the public's essential due process right of free access to the law (including a necessary right freely to copy and circulate all or part of a given law for various purposes), can be reconciled with the· exclusivity afforded a private copyright holder, we cannot altogether rule out the possibility that the simple rule of *Wheaton v. Peters*

should be adapted in some as yet unknown manner to accommodate modern realities. Groups such as BOCA serve an important public function; arguably they do a better job than could the state alone in seeing that complex yet essential regulations are drafted, kept up to date and made available. Since the rule denying copyright protection to judicial opinions and statutes grew out of a much different set of circumstances than do these technical regulatory codes, we think BOCA should at least be allowed to argue its position fully on the basis of an evidentiary record, into which testimony and materials shedding light on the policy issues discussed herein may be placed. Accordingly, while we have serious doubts as to BOCA's ability to prevail, we leave the matter open for consideration by the district court when the merits are reached. Other issues not expressly foreclosed herein will, of course, also be available for consideration by the district court.

*The order granting a preliminary injunction is reversed.*