**GEORGE CAMPBELL PAINTING CORP. and E. Daskal Corp., Plaintiffs,**

v.

**Elaine CHAO, Defendant.**

**Civil Action No. 3–05–cv–00716 (JCH).**

United States District Court, D. Connecticut.

Nov. 28, 2006.

Jane I. Milas, Garcia & Milas, New Haven, CT, for Plaintiffs.

Christine L. Sciarrino, U.S. Attorney's Office, New Haven, CT, for Defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS' CROSS–MOTION FOR SUMMARY JUDGMENT [Doc. Nos. 21 & 29]

HALL, District Judge.

## I. INTRODUCTION

Plaintiffs seek judicial review of the decision of the Secretary of the United States Department of Labor, as entered by her designee, the Administrative Review Board ("ARB"), in the matter of *George Campbell Painting Corp. and E. Daskal Corporation,* ARB case No. 01–069. This court previously refused to dismiss Count II of plaintiffs' complaint which alleges that plaintiffs were denied due process through a lack of fair warning. *See* Ruling on Defendant's Motion to Dismiss ("Ruling") [Doc. No. 18]. The Secretary now moves for summary judgment on this remaining claim, and plaintiffs have filed a

cross-motion for summary judgment on the same issue.

## II. STANDARD OF REVIEW

In a motion for summary judgment, the burden lies on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *SCS Communications, Inc. v. Herrick Co.*, 360 F.3d 329, 338 (2d Cir.2004). The moving party may satisfy this burden "by showing—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. Coca–Cola Co.*, 315 F.3d 101, 105 (2d Cir.2002) (per curiam) (internal quotation marks and citations omitted); *accord Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995).

A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact...." *Miner v. City of Glens Falls*, 999 F.2d 655, 661 (2d Cir.1993) (internal quotation marks and citation omitted). A dispute regarding a material fact is genuine, " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505), *cert. denied*, 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The court resolves "all ambiguities and draw[s] all inferences in favor of the non-moving party in order to determine how a reasonable jury would decide." *Aldrich*, 963 F.2d at 523 (internal citation omitted). Thus, " '[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper.' " *Id.* (quoting *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991)); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir.1992) ("Viewing the evidence in the light most favorable to the nonmovant, if a rational trier could not find for the non-movant, then there is no genuine issue of material fact and entry of summary judgment is inappropriate."). " 'If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.' " *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82–83 (2d Cir.2004) (quoting *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir.1996)).

When a motion for summary judgment is supported by sworn affidavits or other documentary evidence permitted by Rule 56, the nonmoving party "may not rest upon the mere allegations or denials of the [nonmoving] party's pleading." Fed. R.Civ.P. 56(e); *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995). Rather, "the [nonmoving] party's response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial" in order to avoid summary judgment. *Id.* "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some

unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (internal quotations and citations omitted). Similarly, a party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible. *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir.1993).

## III.   FACTUAL BACKGROUND

The court assumes familiarity with the facts. *See* Ruling at 3–5. In the fall of 1992, George Campbell Painting Corpation ("Campbell") was awarded two contracts by the Connecticut Department of Transportation ("ConnDOT"). ConnDOT engaged Campbell as a general contractor and painter for the rehabilitation of the Gold Star Bridge in New London County, Connecticut. Both contracts received federal funds under the Federal–Aid Highways Act, 23 U.S.C. § 101 *et. seq.*, and thus were subject to the prevailing wage requirements of the Davis–Bacon Act ("DBA"), 40 U.S.C. § 3141, *et. seq.*, and its implementing regulations, 29 C.F.R. Part 5.[1] In June 1993, Campell entered into an agreement with E. Daskal Corporation ("Daskal"), under which contract Daskal would provide labor support services for the Gold Star project.

Beginning in June 1996, a regional compliance officer from the United States Department of Labor ("DOL") investigated the wages being paid by the plaintiffs for certain work performed on the Gold Star project. The investigator concluded that the plaintiffs had failed to pay certain employees the prevailing wages set by the Secretary pursuant to the DBA. The DOL

initially determined that Campbell had a wage liability of $270,842.90 for underpaying employees assigned to collect grit that resulted from the abrasive blast cleaning process used on the bridge. Campbell had paid such employees at a wage rate 30¢ above the prevailing rate for "laborers," and the DOL asserted that Campbell should have paid these employees at the higher "painters" rate. The DOL determined that Daskal owed $250,914.15 in back wages for allegedly failing to pay a "laborers" rate to individuals employed as "go-fers," and a "safety boat operators" rate to safety boat operators. The plaintiffs challenged these investigatory findings. Following a 45–day hearing and submission of briefs by the parties, an Administrative Law Judge ("ALJ") ruled against the plaintiffs, adopting virtually the entire post-hearing brief submitted by the Secretary.

The plaintiffs timely appealed this decision to the Administrative Review Board ("ARB"), which affirmed the ALJ's decision in the instant case and four consolidated cases. In a forty-page decision, the ARB held that the record, which consisted of a 10,609-page hearing transcript and over 600 exhibits, "supports the ALJ's findings of fact" and that the ALJ's "conclusions of law are legally correct," even though the ALJ had followed the discouraged practice of adopting wholesale the DOL's brief. ARB Decision at 11 [Doc. No. 9–2].

The plaintiffs challenged the Secretary's decision on the four grounds. On January 23, 2006, this court dismissed three of the four counts of plaintiffs' complaint for failure to state a claim on which relief can be granted. *See* Ruling at 21. The court

---

1.   Payment of DBA wages on this project was mandated by the Federal–Aid Highways Act, 23 U.S.C. § 113.

denied the motion to dismiss Count II, without prejudice to the Secretary to challenge this claim on summary judgment, which the Secretary has now done. Count II alleged that the ARB's holding, that it was "incumbent upon the [plaintiffs] to go beyond the list of job classifications in the wage determination to ascertain the actual local area practice," Compl. at ¶ 38 (quoting ARB Dec. at 25) [Doc. No. 1], improperly relieved the DOL of its constitutional, statutory, and regulatory responsibility to give contractors fair warning of the proper classification of workers on Davis–Bacon projects. Plaintiffs argue that this holding violated the DBA, APA, and Due Process Clause of the Constitution.

## IV. DISCUSSION

"Due process requires that before a criminal sanction or significant civil or administrative penalty attaches, an individual must have fair warning of the conduct prohibited by the statute or the regulation that makes such a sanction possible." *County of Suffolk v. First Am. Real Estate Solutions,* 261 F.3d 179, 195 (2d Cir.2001) (citing, among other cases, *Gen. Elec. Co. v. EPA,* 53 F.3d 1324, 1328–29 (D.C.Cir.1995) (reviewing EPA enforcement action and holding that EPA could not assess fine where plaintiff did not have fair warning of EPA's interpretation of unclear regulation)). The requirement of fair notice seeks to ensure that people may obey the law or regulation and avoid its sanctions. *Building Officials & Code Adm. v.Code Technology, Inc.,* 628 F.2d 730, 734 (1st Cir.1980). "So long as the law is generally available for the public to examine, then everyone may be considered to have constructive notice of it; any failure to gain actual notice results from simple lack of diligence." *Id.*

The Davis–Beacon Act requires that laborers and mechanics who are employed under federal construction contracts be paid no less than the "prevailing wage," which is "based on the wages the Secretary of Labor determines to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work in the civil subdivision of the State in which the work is to be performed." 40 U.S.C. § 3142(b). The prevailing wage determinations must be incorporated into bid packages and construction contracts by the contracting agency, and the same requirement is imposed upon prime contractors if they use subcontractors. *See* 29 C.F.R. § 5.5(a). The prime contractor "shall be responsible for the compliance by any subcontractor or lower tier subcontractor with all the contract clauses in 29 C.F.R. § 5.5." *Id.* at § 5.5(a)(6).

The plaintiffs in this case allege that the DOL failed to give them fair warning of the wage rate at which they should have paid certain workers on the Gold Star projects, and that the ARB nevertheless upheld the assessment of wage liability against the plaintiffs for underpaying these workers. They argue that nothing in the published bid specifications, wage determinations, DOL regulations, or the DBA, gave them fair notice that all workers on the bridge projects should have been paid at painters' wages or that the Daskal go-fers should have been paid laborers' wages, or that Campbell should have known to contact local union officials and/or contractors to determine the proper classification of work on this project. The Secretary counters that Campbell had the notice of required wage rates it claims to have lacked, and that allowing Campbell to perform its own analysis as to which prevailing rates on the wage determination its employees should be paid would completely undermine the remedial purposes of the DBA. The Secretary also argues that Campbell, and not the DOL, had the obli-

gation to provide fair warning to Daskal regarding wage determinations.

The plaintiffs cite several cases from the D.C. Circuit that they believe support their lack of fair notice claim. In *General Electric*, the D.C. Circuit found that the EPA did not give fair warning of its interpretation of the regulations because the regulations and other policy statements were unclear and subject to disagreement within the agency. 53 F.3d at 1333–34. Similarly, in *Satellite Broadcasting Co. v. FCC.*, 824 F.2d 1, 4 (D.C.Cir.1987), the D.C. Circuit found that, although the FCC's interpretation of its regulations was entitled to deference, "if it wishes to use that interpretation to cut off a party's right, it must give full notice of its interpretation." And the D.C. Circuit found in *Gates & Fox Co., Inc. v. OSHA*, 790 F.2d 154, 156–57 (D.C.Cir.1986), that the language of the regulation at issue was too inconsistent or ambiguous to constitute fair notice. The Secretary counters that these cases are all clearly distinguishable, as the present matter does not involve ambiguous or inconsistent regulations. Instead, since the leading decision in *Fry Brothers Corp.*, 1977 WL 24823 (DOL W.A.B.1977), contractors have been on notice under the DBA that they have to pay employees according to locally prevailing practices. The locally prevailing practice in Connecticut, according to the government, was to pay painters' rates to all of Campbell's employees involved in bridge-related work.[2]

■ "As a general principle, parties to government contracts are obliged to know all applicable legal principles." *Abhe & Svogoda, Inc. v. Chao*, 2006 WL 2474202, at *1, 2006 U.S. Dist. LEXIS 60383, at *3 (D.D.C.2006) (related decision involving one of the parties to the ARB's consolidated action);[3] *see also Heckler v. Community Health Serv.*, 467 U.S. 51, 63, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984) (stating "the general rule that those who deal with the Government are expected to know the law"). As in the related case, *Abhe & Svogoda*, the government relies primarily on the principle established in *Fry Brothers*. As DBA wage determinations only list job classifications and minimum wages, without containing job descriptions, *Fry Brothers* stated "that the job content—or task lists—for classifications in Davis–Beacon wage determinations must be based on locally prevailing practices, and that, where union rates prevail, the proper classification of duties under the wage determination is established by the area practice of union contractors signatory to the relevant collective bargaining agreement." *Abhe & Svogoda*, 2006 WL 2474202, at *1, 2006 U.S. Dist. LEXIS 60383, at *3. According to the Wage Appeals Board (predecessor to ARB):

> If a construction contractor who is not bound by the classifications of work at which the majority of employees in the area are working is free to classify or reclassify, grade or subgrade traditional craft work as he wishes, such a contractor can, with respect to wage rates, take

---

**2.** Campbell disagrees that this is the locally prevailing rate and challenges the DOL investigator's limited area practice survey and his conclusion that painters' rates were required for all employees involved in bridge-related work. However, as this court noted in its prior ruling, the regulations permit the Secretary to determine a prevailing wage even where a single wage is not paid to a majority of workers in a particular classification and

does not constrain the Secretary's manner of classifying workers in areas where work classifications are diverse. *See* 29 C.F.R. § 1.2(a)(1).

**3.** Based on its own research, this court agrees with the court in *Abhe & Svogoda*, and this ruling will therefore incorporate much of the analysis of that case.

almost any job away from the group of contractors and the employees who work for them who have established the locality wage standard. There will be little left to the Davis–Bacon Act. Under the circumstances that the Assistant Secretary determined that the wage determinations that had been issued reflected the prevailing wage in the organized sector it does not make any difference at all what the practice may have been for those contractors who do and pay what they wish. Such a contractor could change his own practice according to what he believed each employee was worth for the work he was doing.

*Fry Brothers*, 1977 WL 24823, at *6. The WAB further stated that a contractor "will [not] undertake to assume required labor costs . . . without a careful consideration of his methods of operation as compared to the methods of operation required under negotiated agreements when the wage scales and their classifications patently reflect negotiated arrangements."[4] *Id.* at *7.

■ The plaintiffs argue that the decision in *Fry Brothers* is irrelevant, as it did not address due process issues relating to fair notice. Neither, according to the plaintiffs, is another decision relied on by the government, *American Building Automation,* 2001 WL 328123 (DOL ARB 2001), because the nature of that case was a conformance proceeding, not a hearing on due process issues. *American Building* found that "the Administrator is not required to detail the myriad duties performed by different trades found within a wage determination. Contractors who seek to perform work on a federal con-

struction project subject to the Davis–Beacon Act have an obligation 'to familiarize themselves with the applicable wage standards contained in the wage determination incorporated into the contract solicitation documents.'" *Id.* at *4 (citations omitted). While for purposes of the instant matter *American Building* is irrelevant, as that case was decided well after the plaintiffs' claims arose, the court does agree with the government that, despite the different nature of these cases, this obligation "to familiarize themselves" applies to all contractors who obtain projects under the DBA. This principle is consistent with the general principle that parties to government contracts are expected to know all applicable legal principles. *See supra* at 189.

The plaintiffs claim that the use of unpublished regulations or "secret law" by government agencies to take adverse actions against those who violate them is a due process violation. However, the principle enunciated in *Fry Brothers* is not "secret law," as it has been cited by several courts and WAB/ARB decisions since 1977 and it was relied on by the DOL in its rulemaking in 1989. *See Abhe & Svogoda,* 2006 WL 2474202, at *2–3, 2006 U.S. Dist. LEXIS 60383, at *6–7 (citing decisions). As *Abhe & Svogoda* aptly puts it, "[p]laintiff[s] may indeed have been unaware of the rule announced in *Fry Brothers,* but it is not unreasonable to hold plaintiff[s] responsible for knowing the rule. 'There is no grave injustice in holding parties to a reasonable knowledge of the law.'" *Id.* at *7 (citing *ATC Petroleum, Inc. v. Sanders,* 860 F.2d 1104, 1112 (D.C.Cir.1988)).

---

4. The wage determination indicated that the wage rates for the classifications were based on collectively bargained union rates, as the classifications were followed by notations such as "PAIN0011C," which is the abbreviation for District Council 11 of the International Brotherhood of Painters and Allied Trades. *See* Def.'s Loc.R.Civ.P. 56(a)1 Statement ("Def.'s Stat.") at ¶ 5.

The plaintiffs supplement their "secret law" argument with the argument that the DOL inappropriately proceeded by adjudication rather than rulemaking when it set forth their "clarifying principles" through administrative adjudication. *See* Def.'s Memorandum of Points and Authorities in Support of Summary Judgment ("Mem. in Supp.") at 18 [Doc. No. 22]. Indeed, while an agency "may choose to establish new principles through [adjudication-based] rulemaking, ... due process requires that, when it does so, it provide notice 'which is reasonably calculated to inform all those whose legally protected interest may be affected by the new principle.'" *Abhe & Svogoda*, 2006 WL 2474202, at *2, 2006 U.S. Dist. LEXIS, at *5 (citations omitted). However, as the Secretary notes, *Fry Brothers* was not a novel decision; indeed, the WAB indicated that it was dealing with "established principles" of the DBA. *Fry Brothers*, 1977 WL 24823, at *6. Moreover, federal agencies are generally given broad discretion to announce new principles through adjudication. *See NLRB v. Bell Aerospace Co. Div. of Textron, Inc.*, 416 U.S. 267, 294, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974) ("[T]he choice between rulemaking and adjudication lies in the first instance within the [agency's] discretion.").

Even if it is true, as Campbell argues, that the wage determination accompanying its Gold Star contracts did not give notice that wages are determined by looking at locally prevailing practices, the regulations implementing the Davis–Beacon Act specifically provide that "[a]ll questions relating to the application and interpretation of wage determinations (including the classifications therein) issued pursuant to part 1 of this subtitle, of the rules contained in this part and in parts 1 and 3, and of the labor standards provisions of any of the statutes listed in § 5.1 shall be referred to the Administrator for appropriate ruling or interpretation." 29 C.F.R. § 5.13. However, Campbell has not explained why it did not make use of this procedure to resolve any potential ambiguities as to proper pay rates. The same is true regarding the claim that no fair warning was given that Daskal's go-fers were required to be paid at laborers' wages. Indeed, because the regulations require a prime contractor to ensure compliance by their subcontractors, *see id.* at § 5.5(a)(6), any uncertainties Campbell may have had regarding the pay rate of Daskal's go-fers should have been directed to the Administrator.

Finally, allowing plaintiffs to argue that it should have been the Secretary's job to inform them of their obligations under the Davis–Beacon Act, and that they therefore were permitted to perform their own analysis of prevailing wage rates, would undermine the remedial goals of the Davis–Beacon Act. Indeed, the purpose of the minimum wage provisions of the DBA was "not ... to benefit contractors, but rather to protect their employees from substandard earnings by fixing a floor under wages on Government projects." *United States v. Binghamton Const. Co.*, 347 U.S. 171, 177, 74 S.Ct. 438, 98 L.Ed. 594 (1954).

## V. CONCLUSION

For the foregoing reasons, the court GRANTS the Secretary's Motion for Summary Judgment [**Doc. No. 21**] and DENIES the plaintiffs' Cross–Motion for Summary Judgment [**Doc. No. 29**].

**SO ORDERED.**