**PRACTICE MANAGEMENT INFORMA-TION CORPORATION, a California Corporation, Plaintiff–Appellant,**

v.

**The AMERICAN MEDICAL ASSOCIA-TION, an Illinois nonprofit corpo-ration, Defendant–Appellee.**

No. 94–56774.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 7, 1995.

Submission Vacated June 18, 1996.

Resubmitted Sept. 13, 1996.

Decided Aug. 6, 1997.

Joseph R. Re, Knobbe, Martens, Olson & Bear, Newport Beach, CA, for plaintiff-appellant.

Jack Bierig, Sidley & Austin, Chicago, IL, for defendant-appellee.

Maureen Brodoff, National Fire Protection Association, Quincy, MA, for amici.

Before: BROWNING, NORRIS, and REINHARDT, Circuit Judges

JAMES R. BROWNING, Circuit Judge.

Practice Management Information Corporation ("Practice Management") appeals from a partial summary judgment and preliminary injunction forbidding it from publishing a medical procedure code copyrighted by the American Medical Association ("the AMA").[1]

## I.

Over thirty years ago, the AMA began the development of a coding system to enable physicians and others to identify particular medical procedures with precision. These efforts culminated in the publication of the Physician's Current Procedural Terminology ("the CPT"), on which the AMA claims a copyright.

The current edition of the CPT identifies more than six thousand medical procedures and provides a five-digit code and brief description for each. The CPT is divided into six sections—evaluation, anesthesia, surgery, radiology, pathology, and medicine. Within each section, procedures are arranged to enable the user to locate the code number readily. In the anesthesia section, procedures are grouped according to the body part receiving the anesthetic; in the surgical section, the procedures are grouped according to the body system, such as the digestive or urinary system, on which surgery is performed. The AMA revises the CPT each year to reflect new developments in medical procedures.

In 1977, Congress instructed the Health Care Financing Administration ("HCFA") to establish a uniform code for identifying physicians' services for use in completing Medicare and Medicaid claim forms. *See* 42 U.S.C. § 1395w–4(c)(5). Rather than creating a new code, HCFA contracted with the AMA to "adopt and use" the CPT. Agreement ¶ 1. The AMA gave HCFA a "non-exclusive, royalty free, and irrevocable license to use, copy, publish and distribute" the CPT. *Id.* ¶ 3(a). In exchange, HCFA agreed "not to use any other system of procedure nomenclature . . . for reporting physicians' services" and to require use of the CPT in programs administered by HCFA, by

---

1. We have jurisdiction under 28 U.S.C. § 1292(a)(1). *See MAI Sys. Corp. v. Peak Computer, Inc.,* 991 F.2d 511, 516 (9th Cir.1993).

its agents, and by other agencies whenever possible. *Id.* ¶¶ 1, 2.[2]

HCFA published notices in the Federal Register incorporating the CPT in HCFA's Common Procedure Coding System, *see* 48 Fed.Reg. 16750, 16753 (1983); 50 Fed.Reg. 40895, 40897 (1985), and adopted regulations requiring applicants for Medicaid reimbursement to use the CPT. *See* 42 C.F.R. § 433.112(b)(2) (requiring compliance with Part 11 of the *State Medicaid Manual,* which requires states receiving federal funding for Medicaid to adopt the Administration's Common Procedure Coding System as the exclusive medical procedure coding system).[3]

Practice Management, a publisher and distributor of medical books, purchases copies of the CPT from the AMA for resale. After failing to obtain the volume discount it requested, Practice Management filed this lawsuit seeking a declaratory judgment that the AMA's copyright in the CPT was invalid for two reasons: (1) the CPT became uncopyrightable law when HCFA adopted the regulation mandating use of CPT code numbers in applications for Medicaid reimbursement, and (2) the AMA misused its copyright by entering into the agreement that HCFA would require use of the CPT to the exclusion of any other code. The district court granted partial summary judgment for the AMA and preliminarily enjoined Practice Management from publishing the CPT. Practice Management appeals.

## II.

■ Practice Management's argument that the CPT became law and entered the public domain when HCFA by regulation required its use rests ultimately upon *Banks v. Manchester,* 128 U.S. 244, 9 S.Ct. 36, 32

L.Ed. 425 (1888), which held that judicial opinions are uncopyrightable. *Banks* in turn rests upon two grounds, neither of which would justify invalidation of the AMA's copyright.

The first ground for the *Banks* holding that judicial opinions are not subject to copyright is that the public owns the opinions because it pays the judges' salaries. *Id.* at 253, 9 S.Ct. at 39. The second is that as a matter of public policy, "the whole work done by the judges constitutes the authentic exposition and interpretation of the law, which, binding every citizen, is free for publication to all . . . ." *Id.*

The first ground is clearly not applicable to the CPT. The copyright system was not significant in *Banks* because judges had no proprietary interest in their opinions. The copyright system is of central importance in this case because the AMA authored, owns, and maintains the CPT and claims a copyright in it.

The copyright system's goal of promoting the arts and sciences by granting temporary monopolies to copyrightholders was not at stake in *Banks* because judges' salaries provided adequate incentive to write opinions. In contrast, copyrightability of the CPT provides the economic incentive for the AMA to produce and maintain the CPT. "To vitiate copyright, in such circumstances, could, without adequate justification, prove destructive of the copyright interest, in encouraging creativity," a matter of particular significance in this context because of "the increasing trend toward state and federal adoptions of model codes." 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 5.06[C], at 5–92 (1996).[4] As the AMA

---

**2.** HCFA had the right to cancel the agreement and use a competing coding system at any time and without penalty on ninety days notice. Agreement ¶ 10.

**3.** Other federal agencies require physicians to use the CPT. *See, e.g.,* 20 C.F.R. § 10.411(c) (stating that physicians seeking compensation under the Federal Employees' Compensation Act must identify their services using CPT codes). The state of California has incorporated the CPT into its Code of Regulations. *See* Cal.Code Regs. tit. 22, § 51050.

**4.** *See also Building Officials & Code Admin. v.Code Tech., Inc.,* 628 F.2d 730, 736 (1st Cir. 1980) (recognizing "a possible trend towards state and federal adoption, either by means of incorporation by reference or otherwise, of model codes"); 58 Fed.Reg. 57643, 57644–45 (1993) (Office of Management and Budget directed federal agencies to adopt private standards "whenever practicable" in order to "eliminate[ ] the costs to the Government of developing its own standards").

points out, invalidating its copyright on the ground that the CPT entered the public domain when HCFA required its use would expose copyrights on a wide range of privately authored model codes, standards, and reference works to invalidation.[5] Non-profit organizations that develop these model codes and standards warn they will be unable to continue to do so if the codes and standards enter the public domain when adopted by a public agency.[6]

The second consideration underlying *Banks*—the due process requirement of free access to the law—may be relevant but does not justify termination of the AMA's copyright. There is no evidence that anyone wishing to use the CPT has any difficulty obtaining access to it. *See Texas v. West Publ'g Co.*, 882 F.2d 171, 177 (5th Cir.1989). Practice Management is not a potential user denied access to the CPT, but a putative copier wishing to share in the AMA's statutory monopoly. Practice Management does not assert the AMA has restricted access to users or intends to do so in the future.

The AMA's right under the Copyright Act to limit or forgo publication of the CPT poses no realistic threat to public access. The AMA has no incentive to limit or forgo publication. If the AMA were to do so, HCFA would no doubt exercise its right to terminate its agreement with the AMA.[7] Other remedies would also be available, including "fair use" and due process defenses for infringers, *see* 1 Nimmer & Nimmer, *supra*, § 5.06[C], at 5–92, and, perhaps most rele-

vant, mandatory licensing at a reasonable royalty could be required in light of the great public injury that would result if adequate access to the CPT were denied. *See Abend v. MCA, Inc.*, 863 F.2d 1465, 1479 (9th Cir. 1988); *Universal City Studios, Inc. v. Sony Corp. of America*, 659 F.2d 963, 976 (9th Cir.1981), *rev'd on other grounds*, 464 U.S. 417, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984).

The Supreme Court has not considered a case in which the author asserted a proprietary interest in material adopted by the government as law. However, the First and Second Circuits have declined to enjoin enforcement of private copyrights in these circumstances.

In *Building Officials & Code Admin. v. Code Technology, Inc.*, 628 F.2d 730 (1st Cir.1980), the district court preliminarily enjoined Code Technology, Inc. from copying a building code copyrighted by Building Officials & Code Administration ("BOCA"), a private, non-profit group, and adopted by the State. The First Circuit reversed. It recognized the problem posed by *Banks*, but nonetheless refrained from holding BOCA's copyright invalid:

> Groups such as BOCA serve an important public function; arguably they do a better job than could the state alone in seeing that complex yet essential regulations are drafted, kept up to date and made available. Since the rule denying copyright protection to judicial opinions and statutes grew out of a much differ-

---

**5.** *See, e.g.,* 32 C.F.R. § 199.13(e)(2) (limiting payment of dental benefits to procedures defined in the Current Dental Terminology); 32 C.F.R. § 199.2 (conditioning payment of civilian medical benefits for mental disorders on showing the patient has a disorder listed in the *Diagnostic & Statistical Manual of Mental Disorders (DSM III)* ); 16 C.F.R. § 1505.5(e)(5) (requiring electrically operated toys to have a type SP–2 electrical power cord, as defined in the National Electrical Code authored by the National Fire Protection Association); 16 C.F.R. § 1201.7 (requiring architectural glazing materials to conform to standards published by the American National Standards Institute); 7 C.F.R. § 1755.870(a)(8) (incorporating by reference Underwriters Laboratories Inc.'s Standard Test for Flame Propagation Height of Electrical and Optical–Fiber Cables Installed Vertically in Shafts); 11th Cir. R. 28–2(j) (requiring attorneys to con-

form their citations to *The Bluebook: A Uniform System of Citation* ).

**6.** Amicus briefs have been filed by the American Dental Association, American National Standards Institute, American Society of Association Executives, American Society of Heating, Refrigerating & Air–Conditioning Engineers, American Society of Mechanical Engineers, American Society for Testing and Materials, National Fire Protection Association, and Underwriters Laboratories Inc.

**7.** Alternatively, HCFA might by regulation or contract require the AMA to provide greater access. *See* H.R.Rep. No. 94–1476, at 59, *reprinted in* 1976 U.S.C.C.A.N. 5659, 5672; Marvin J. Nodiff, *Copyrightability of Works of the Federal and State Governments Under the 1976 Act*, 29 St. Louis L.J. 91, 104 (1984).

ent set of circumstances than do these technical regulatory codes, we think BOCA should at least be allowed to argue its position fully on the basis of an evidentiary record, into which testimony and materials shedding light on the policy issues discussed herein may be placed.

*Id.* at 736.

In *CCC Info. Servs., Inc. v. Maclean Hunter Mkt. Reports, Inc.,* 44 F.3d 61 (2d Cir. 1994), the Second Circuit declined to invalidate the copyright on a privately prepared listing of automobile values that several states required insurance companies to use in calculating insurance awards:

> We are not prepared to hold that a state's reference to a copyrighted work as a legal standard for valuation results in loss of the copyright. While there are indeed policy considerations that support CCC's argument, they are opposed by countervailing considerations. For example, a rule that the adoption of such a reference by a state legislature or administrative body deprived the copyright owner of its property would raise very substantial problems under the Takings Clause of the Constitution. We note also that for generations, state education systems have assigned books under copyright to comply with a mandatory school curriculum. It scarcely extends CCC's argument to require that all such assigned books lose their copyright—as one cannot comply with the legal requirements without using the copyrighted works. Yet we think it unlikely courts would reach this conclusion. Although there is scant authority of CCC's

argument, Nimmer's treatise opposes such a suggestion as antithetical to the interests sought to be advanced by the Copyright Act.

*Id.* at 736.

For the reasons we have stated earlier, as well as those relied upon by the First and Second Circuits, we affirm the district court's conclusion that the AMA's copyright in the CPT should be enforced.[8]

### III.

Practice Management argues that the AMA misused its copyright by negotiating a contract in which HCFA agreed to use the CPT exclusively. *See Lasercomb America, Inc. v. Reynolds,* 911 F.2d 970, 977–79 (4th Cir.1990) (defense of copyright misuse "forbids the use of the copyright to secure an exclusive right or limited monopoly not granted by the Copyright Office"); *see also DSC Communications Corp. v. DGI Techs., Inc.,* 81 F.3d 597, 601 (5th Cir.1996) (same).[9] We have implied in prior decisions that misuse is a defense to copyright infringement. *See Triad Sys. Corp. v. Southeastern Express Co.,* 64 F.3d 1330, 1337 (9th Cir.1995); *Supermarket of Homes, Inc. v. San Fernando Valley Bd. of Realtors,* 786 F.2d 1400, 1408 (9th Cir.1986). We now adopt that rule.

On the undisputed facts in the record before us, we conclude the AMA misused its copyright by licensing the CPT to HCFA in exchange for HCFA's agreement not to use a competing coding system. The AMA argues it did not insist HCFA use only the CPT; rather, HCFA decided to use a single code to take advantage of natural efficiencies. However, the plain language of the AMA's licens-

---

8. Practice Management argues that the CPT is an uncopyrightable industry standard or "idea" under section 102(b) of the Copyright Act, the merger doctrine, and *Sega Enters. Ltd. v. Accolade, Inc.,* 977 F.2d 1510, 1523–24 (9th Cir.1993) because HCFA mandates use of CPT codes in Medicaid applications. This court has not allowed the owners of copyrights in expressions mandated by industry standards to use their copyrights to stifle independent creative expression in the industry. *Sega,* 977 F.2d at 1523–24. However, the AMA's copyright does not stifle independent creative expression in the medical coding industry. It does not prevent Practice Management or the AMA's competitors from de-

veloping comparative or better coding systems and lobbying the federal government and private actors to adopt them. It simply prevents wholesale copying of an existing system.

Practice Management did not appeal the district court's finding that the CPT was sufficiently original to qualify for copyright protection, and we do not review that question.

9. Copyright misuse does not invalidate a copyright, but precludes its enforcement during the period of misuse. *See Lasercomb,* 911 F.2d at 979 n. 22.

ing agreement requires HCFA to use the AMA's copyrighted coding system and prohibits HCFA from using any other. The exclusivity requirement is a part of the consideration in exchange for which the AMA agreed to grant HCFA a "non-exclusive, royalty free, and irrevocable license to use, copy, publish and distribute" the CPT. Although HCFA apparently had nothing to gain from inclusion of the exclusivity provision, which side urged its inclusion is of no consequence. *Cf. Anchor Serum Co. v. Federal Trade Comm.*, 217 F.2d 867, 870 (7th Cir.1954) (rejecting argument that exclusive dealing contract did not violate section 3 of the Clayton Act because buyer initiated negotiations and seller did not impose the contract terms on buyer). The controlling fact is that HCFA is prohibited from using any other coding system by virtue of the binding commitment it made to the AMA to use the AMA's copyrighted material exclusively. The absence of the agreement would not preclude HCFA from doing what the AMA suggests would be proper—deciding on its own to use only the AMA's system. What offends the copyright misuse doctrine is not HCFA's decision to use the AMA's coding system exclusively, but the limitation imposed by the AMA licensing agreement on HCFA's rights to decide whether or not to use other forms as well. Conditioning the license on HCFA's promise not to use competitors' products constituted a misuse of the copyright by the AMA.

The adverse effects of the licensing agreement are apparent. The terms under which the AMA agreed to license use of the CPT to HCFA gave the AMA a substantial and unfair advantage over its competitors. By agreeing to license the CPT in this manner, the AMA used its copyright "in a manner violative of the public policy embodied in the grant of a copyright." *Lasercomb*, 911 F.2d at 977.

█ The AMA argues the copyright misuse defense fails because Practice Management did not establish an antitrust violation. We agree with the Fourth Circuit that a defendant in a copyright infringement suit need not prove an antitrust violation to prevail on a copyright misuse defense. *See Lasercomb*, 911 F.2d at 978.

█ We also reject the AMA's argument that the *Noerr–Pennington* doctrine immunized its actions. Because Practice Management need not establish an antitrust violation, we need not consider the AMA's antitrust defenses. Moreover, because the AMA did not lobby HCFA to adopt the CPT, the AMA's First Amendment right to petition the government is not at stake.

### IV.

We affirm the district court's ruling that the AMA did not lose its copyright when use of the CPT was required by government regulations, but reverse the ruling with respect to copyright misuse. We hold that Practice Management established its misuse defense as a matter of law, vacate the preliminary injunction, and remand for entry of judgment in favor of Practice Management.

AFFIRMED IN PART, REVERSED IN PART, VACATED, AND REMANDED.