261 F.3d 179 (2nd Cir. 2001)
 COUNTY OF SUFFOLK, NEW YORK, Plaintiff-Appellant-Cross-Appellee,
v.
FIRST AMERICAN REAL ESTATE SOLUTIONS, Defendant Appellee-Cross-Appellant,
EXPERIAN INFORMATION SOLUTIONS, INC., doing business as Experian, doing business as Experian Real Estate Solutions, TRW REDI PROPERTY DATA, also known as Information Systems and Services, Inc., Defendants.
 Docket Nos. 00-9011(L), 00-9169(XAP)
August Term, 2000
 UNITED STATES COURT OF APPEALS, SECOND CIRCUIT
 Argued: February 28, 2001
Decided: July 25, 2001
 
 Appeal from an opinion and order of the United States District Court for the Southern District of New York (John F. Keenan, Judge) granting Defendant-Appellee-Cross-Appellant First American Real Estate Solutions's motion for reconsideration and dismissing Plaintiff-Appellant-Cross-Appellee County of Suffolk's complaint in its entirety for failure to state a claim upon which relief could be granted. The District Court concluded that, under New York State's Freedom of Information Law, First American may freely copy and distribute Suffolk County's official tax maps and that Suffolk County may not prevent First American from doing so on the basis of its copyrights.
 We hold that New York State's Freedom of Information Law does not abrogate Suffolk County's copyrights in its official tax maps and find that it is possible for Suffolk County to comply with its obligations under the Freedom of Information Law while preserving its rights under the Copyright Act. We therefore vacate the judgment below and remand for further proceedings. We also dismiss as moot First American's cross-appeal asserting that the District Court abused its discretion in refusing to award it costs and attorneys' fees, pursuant to 17 U.S.C. § 505.
 Vacated and remanded.[Copyrighted Material Omitted][Copyrighted Material Omitted]
 JELTJE DEJONG, Assistant County Attorney, Hauppauge, NY, on behalf of Robert J. Cimino, Suffolk County Attorney, for Plaintiff-Appellant-Cross-Appellee.
 ANDREW L. DEUTSCH, Piper Marbury Rudnick & Wolfe LLP, New York, NY (Edward F. Maluf, Christine M. Jaskiewicz, of counsel), for Defendant-Appellee-Cross-Appellant.
 FRANK K. WALSH, Assistant Solicitor General, Albany, NY (Preeta D. Bansal, Solicitor General, Daniel Smirlock, Deputy Solicitor General, of counsel), on behalf of Eliot Spitzer, Attorney General of theState of New York, for amicus curiae State of New York.
 MICHAEL D. HESS, Corporation Counsel of the City of New York, New York, NY (Leonard Koerner, Katherine Winningham, of counsel), for amicus curiae City of New York.
 Before: JACOBS, STRAUB, and POOLER, Circuit Judges.
 STRAUB, Circuit Judge:
 
 
 1
 Plaintiff-Appellant-Cross-Appellee County of Suffolk, New York ("Suffolk County") appeals from an opinion and order of the United States District Court for the Southern District of New York (John F. Keenan, Judge) granting Defendant-Appellee-Cross-Appellant First American Real Estate Solutions's ("First American") motion for reconsideration and dismissing Suffolk County's complaint in its entirety for failure to state a claim upon which relief may be granted, pursuant to FED. R. CIV. P. 12(b)(6). First American cross-appeals from the District Court's denial of its motion for costs and attorneys' fees under the Copyright Act, 17 U.S.C. § 505.
 
 
 2
 Suffolk County sued First American, and other companies acquired by First American,[1] under the Copyright Act of 1976 (the "Copyright Act"), 17 U.S.C. § 101 et. seq. Suffolk County alleged that the defendants infringed its copyrights in its official tax maps by publishing and marketing those maps without Suffolk County's permission. First American moved to dismiss for failure to state a claim, arguing, inter alia, that New York State's Freedom of Information Law ("FOIL") bars Suffolk County from asserting a copyright in its official tax maps.
 
 
 3
 The District Court initially denied First American's motion. County of Suffolk v. Experian Info. Solutions, Inc., No. 99 Civ. 8735 (JFK), 2000 WL 628731 (S.D.N.Y. May 15, 2000) ("County of Suffolk I"). After granting First American's motion for reconsideration, the District Court then agreed with First American and held that Suffolk County may not use its copyrights to prevent First American from freely disseminating its official tax maps. County of Suffolk v. Experian Info. Solutions, Inc., No. 99 Civ. 8735 (JFK), 2000 WL 1010262 (S.D.N.Y. July 21, 2000) ("County of Suffolk II"). The District Court then denied First American's motion for attorneys' fees. Suffolk County timely appealed, and First American cross-appealed from the denial of its attorneys' fees motion.
 
 
 4
 This case presents several novel issues including (1) whether, and to what degree, deference is due an advisory opinion analyzing the potential conflict between FOIL and the Copyright Act by New York State's Committee on Open Government, which is required by statute to issue advisory opinions regarding FOIL; (2) whether, by enacting FOIL, New York abrogated its municipalities' copyrights; and (3) whether the official tax maps are in the public domain from their inception. We hold that FOIL does not abrogate Suffolk County's copyrights and find that it is possible for Suffolk County to comply with its obligations under FOIL while preserving its rights under the Copyright Act. In so holding, we decline to defer to the Committee on Open Government's advisory opinion. We also find that Suffolk County sufficiently alleged that its tax maps possessenough originality to withstand First American's motion to dismiss. Finally, we find, at least on the record before us, that Suffolk County's official tax maps cannot be deemed, as a matter of law, to be in the public domain since their inception. We thus vacate the judgment below and remand for further proceedings. In light of this disposition, we do not address First American's cross-appeal and dismiss it as moot.
 
 BACKGROUND
 
 5
 Because this is an appeal from the grant of a motion to dismiss the complaint, we accept as true all factual allegations set forth in the complaint, and any documents attached, incorporated by reference, or integral to the claims asserted, and we draw all reasonable inferences in favor of Suffolk County. See Schnall v. Marine Midland Bank, 225 F.3d 263, 266 (2d Cir. 2000).
 
 I. Factual Background
 
 6
 During 1974, Suffolk County, through its Real Property Tax Service Agency, created and designed a series of original maps ("tax maps") and an index system reflecting the ownership, size, and location of real property in each of Suffolk County's political subdivisions. Compl. ¶ 10. Suffolk County is required by law to create such tax maps and to make them available to the public. N.Y. REAL PROP. TAX LAW § 503(1)(a), (2) (McKinney 2000). All tax districts and special district boundaries were created and referenced by Suffolk County on its maps and indices. Compl. ¶ 10. Suffolk County creates new maps and indices annually to reflect alterations in size, shape, and/or location of parcels of land, subdivisions, or roadways. Id. Currently, there are twelve albums representing ten townships containing over 4,600 tax maps, which show over 500,000 parcels of land. Id.
 
 
 7
 Suffolk County alleges that its "tax maps contain a substantial amount of original material, research, compilation and organization wholly original with the plaintiff and are copyrightable subject matter under the laws of the United States." Id. ¶ 11. These tax maps, Suffolk County asserts, "are the result of substantial work, effort and expense." Id. Suffolk County "registered its copyright claims from the initial cartographic compilation in 1974, and during various times thereafter in order to copyright new and amended maps." Id. ¶ 12. Suffolk County has received copyright registrations for these works and has affixed a notice of copyright to the tax maps it has published or sold to the public. Id. It also affixed a notice of copyright in the introduction to each tax map album. Id. Suffolk County is the sole proprietor of all right, title, and interest in and to such copyrights and in and to its maps. Id. ¶ 14.
 
 
 8
 Suffolk County alleges that the defendants have infringed its copyrights in the tax maps by publishing and placing on the market, without license or its consent, copies of the tax maps and CD-ROM disks containing the maps. Id. ¶¶ 15-16. Suffolk County claims that it notified the defendants of their alleged infringement but that the defendants refused to cease their infringing conduct. Id. ¶ 18. Suffolk County then filed this action seeking to enjoin the defendants from copying, utilizing, and marketing in any manner the tax maps, or any portion thereof, and seeking damages suffered as a result of the defendants' infringement.
 
 
 9
 First American moved to dismiss for failure to state a claim, arguing that (1) the tax maps lack sufficient originality to qualify for copyright protection because their content is dictated by state regulation; (2)the tax maps are sufficiently analogous to judicial opinions and statutes to be deemed in the public domain from their inception and, hence, not entitled to copyright protection; and (3) FOIL bars Suffolk County from owning a copyright in its tax maps.
 
 
 10
 II. Overview of New York State's Freedom of Information Law
 
 
 11
 New York enacted its Freedom of Information Law to provide the public with greater access to governmental records and to increase public accountability. N.Y. PUB. OFF. LAW § 84 (McKinney 1988). Under FOIL, state agencies, which include the State's sixty-two counties,[2] must "make available for public inspection and copying all records," subject to certain exceptions not relevant here. N.Y. PUB. OFF. LAW § 87(2) (McKinney Supp. 2001). The covered entities may deny access to those records falling within an enumerated exception and must, if the person seeking access appeals the denial in writing, fully explain in writing the reasons for its denial. Id.; id. § 89(3) & (4). FOIL establishes the Committee on Open Government (the "Committee"), which, among other tasks, is required to furnish advisory opinions to any person or agency. N.Y. PUB. OFF. LAW § 89(1) (McKinney Supp. 2001). The Committee, however, does not substantively participate in the review process established by subdivision 4 of section 89 and only receives a copy of the state agency's determination whether to provide access after an appeal to that agency has been made. John P. v. Whalen, 54 N.Y.2d 89, 95, 429 N.E.2d 117, 120, 444 N.Y.S.2d 598, 601 (1981). The Committee is required annually to propose recommendations for changes in the law to the Governor of the State of New York and the State Legislature. N.Y. PUB. OFF. LAW § 89(1)(b)(v) (McKinney Supp. 2001).
 
 III. Procedural History
 
 12
 The District Court initially denied First American's motion to dismiss, holding that (1) Suffolk County was entitled to offer evidence regarding the originality of its tax maps in order to support its claim of copyright infringement; (2) tax maps are not in the public domain from inception; and (3) FOIL, by its text, does not prohibit Suffolk County from enforcing its copyrights. County of Suffolk I, 2000 WL 628731, at *3-*5. The District Court refused to defer to two unpublished advisory opinions of the Committee, in which the Committee's Executive Director indicated his view that a local government's claim of copyright would be superseded by FOIL. Id. at *5 n.2. The effect of FOIL on a local government's copyright was not analyzed extensively in either of these Committee opinions.
 
 
 13
 After First American's motion was briefed and submitted, but before the District Court filed County of Suffolk I, the Committee issued a third advisory opinion regarding the effect of FOIL on a state agency's copyright.[3] Unlike the prior opinions, this advisory opinion containedsubstantial analysis. First American moved for reconsideration solely on the FOIL issue, emphasizing this third advisory opinion, and argued that the District Court should defer to the Committee's interpretation of FOIL unless that interpretation is irrational or unreasonable. The District Court agreed, granted the motion for reconsideration, and then dismissed Suffolk County's complaint in its entirety. The District Court found that this new advisory opinion was neither irrational nor unreasonable. County of Suffolk II, 2000 WL 1010262, at *5. The District Court further analyzed FOIL and Suffolk County's obligation to create tax maps by law. The District Court concluded that prohibiting Suffolk County from enforcing its copyrights would not generate an economic disincentive to creating tax maps. Id.
 
 
 14
 Suffolk County timely appealed the order dismissing its complaint. In its appeal, Suffolk County challenges both the District Court's decision to grant First American's motion for reconsideration and the dismissal of its complaint. In this appeal, we have also received the benefit of the participation of amici curiae State of New York ("State") and City of New York ("City"). Amici argue on behalf of their interests in their use and development of geographic information systems ("GIS").[4] We note the amici's interests not because we intend to decide how FOIL impacts GIS, but because we recognize the broader context that many of the issues raised on appeal implicate.
 
 
 15
 In a subsequent order, the District Court denied First American's application for an award of costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505, finding that Suffolk County's case was neither frivolous nor objectively unreasonable. First American timely cross-appealed from this order. Given our disposition of this appeal, however, we do not address the merits of First American's cross-appeal.
 
 DISCUSSION
 I. The Motion for Reconsideration
 
 16
 On appeal, Suffolk County contends that the District Court abused its discretion in granting the motion for reconsideration based on the third Committee advisory opinion because, Suffolk County argues, that opinion was neither controlling precedent nor a change in the applicable law.
 
 
 17
 Preliminarily, we must address whether the grant of a motion for reconsideration is appealable. In Shrader v. CSX Transportation, Inc., we expressed "grave doubts" whether such a motion is appealable, even if we properly had jurisdiction over the case for independent reasons. 70 F.3d 255, 256 n.1 (2d Cir. 1995). As we noted, such a decision, by itself, would not be an appealable final order sufficient to provide an appellate court with jurisdiction. Id. But because we found that the merits of the motion at issue in Shrader were easily resolved, we proceeded to address them without suggesting that the grant of a motion for reconsideration is in fact reviewable. See id. at 256-57 & n.1 (finding that the district court's decision to reconsider its earlier ruling was not an abuse of discretion).
 
 
 18
 Here, First American provided the District Court with a new advisory opinion, containing substantial analysis, authored by the entity specifically charged by FOILwith providing advisory opinions regarding that statute-in short, a decision "that might reasonably be expected to alter the conclusion reached by the court." Id. at 257. Although we ultimately disagree with the weight the District Court accorded this new opinion, we cannot say that it exceeded its allowable discretion in reconsidering its earlier order. As in Shrader, however, we do not suggest that the grant of a motion to reconsider is necessarily reviewable. See id. at 257 n.1.
 
 II. Dismissal of the Complaint
 A. Relevant Legal Standards
 
 19
 We review de novo a district court's decision to dismiss a complaint for failure to state a claim upon which relief may be granted. See Friedl v. City of New York, 210 F.3d 79, 83 (2d Cir. 2000). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (internal quotation marks omitted), cert. denied, 519 U.S. 808 (1996). To establish a claim of copyright infringement, "a plaintiff with a valid copyright must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." Hamil Am. Inc. v. GFI, 193 F.3d 92, 99 (2d Cir. 1999) (internal quotation marks omitted), cert. denied, 528 U.S. 1160 (2000).
 
 
 20
 B. May States, and Their Subdivisions, Obtain a Copyright?
 
 
 21
 Although the federal government does not possess a statutory right to obtain copyright protection for its works, 17 U.S.C. § 105, the Copyright Act is silent as to the rights of states or their subdivisions. Nor is there an indication in the statute that copyright ownership is limited to private persons. See 17 U.S.C. § 101 ("'Copyright owner,' with respect to any one of the exclusive rights comprised in a copyright, refers to the owner of that particular right."); id. § 102 (noting simply that copyright protection subsists "in original works of authorship..."). By specifying a limitation on ownership solely against the federal government, the Copyright Act implies that states and their subdivisions are not excluded from protection under the Act. See Bldg. Officials & Code Adm. v. Code Tech., Inc., 628 F.2d 730, 735-36 (1st Cir. 1980) ("Works of state governments are therefore left available for copyright protection by the state or the individual author...."); Nat'l Conf. of Bar Exam'rs v. Multistate Legal Studies, Inc., 495 F. Supp. 34, 35 (N.D. Ill. 1980), aff'd, 692 F.2d 478 (7th Cir. 1982); 1 MELVILLE B. NIMMER &AMP; DAVID NIMMER, NIMMER ON COPYRIGHT § 5.06[A], at 5-81 n.1 (2001); cf. Real Estate Data, Inc. v. Sidwell Co., 809 F.2d 366, 371 (7th Cir. 1987) (indicating that, under the Copyright Act of 1909 "work-for-hire" doctrine, the county, which contracted for the production of tax maps, was presumed to be the copyright owner (rather than the creator of the maps)). Thus, Suffolk County may own a copyright under the Copyright Act. The question remains whether Suffolk County has sufficiently alleged that it possesses a valid copyright in its tax maps.
 
 
 22
 C. Should Suffolk County Be Permitted to Present Evidence as to the Maps' Originality?
 
 
 23
 To allege a claim of copyright infringement, Suffolk County must claim that a substantial similarity exists between the defendant's work and the protectible elements of its work. To be "protectible,"these elements must be original. See Feist Publ'ns Inc. v. Rural Tel. Serv., Co., 499 U.S. 340, 345-49 (1991) (holding that a compilation of facts does not qualify for copyright protection unless it possesses sufficient originality, that is, "it possesses at least some minimal degree of creativity"); Streetwise Maps, Inc. v. VanDam, Inc., 159 F.3d 739, 747 (2d Cir. 1998). As an alternate ground for affirmance, First American argues that Suffolk County's tax maps lack sufficient originality, and are hence not subject to copyright protection, because the content and the form of the maps are dictated by state law and regulations.
 
 
 24
 In Streetwise Maps, we addressed what portion, if any, of a map could be protected against copyright infringement. We noted that items such as street location and landmarks were "physical facts"-and thus not protected elements-but recognized that the presentation of such physical facts could be original. Id. at 747-48; accord Mason v. Montgomery Data, Inc., 967 F.2d 135, 141 (5th Cir. 1992). We thus focused on "the overall manner in which [the plaintiff] selected, coordinated, and arranged the expressive elements in its map, including color, to depict the map's factual content." Streetwise Maps, 159 F.3d at 748. The level of creativity required to demonstrate that the work is original "'is extremely low; even a slight amount will suffice.'" Mason, 967 F.2d at 142 (quoting Feist, 499 U.S. at 345). Suffolk County's complaint alleges that its "tax maps contain a substantial amount of original material, research, compilation and organization wholly original with the plaintiff." Compl. ¶ 11. The District Court thus correctly found that Suffolk County has sufficiently alleged that its work is protected.
 
 
 25
 D. Did the New York Legislature, by Enacting FOIL, Abrogate Suffolk County's Copyright?
 
 
 26
 The New York State Legislature may enact laws that impact the property or affairs of local governments, such as Suffolk County, especially on matters of state concern. See City of New York v. State of New York, 94 N.Y.2d 577, 589-90, 730 N.E.2d 920, 925-26, 709 N.Y.S.2d 122, 127-28 (2000); see also Kelley v. McGee, 57 N.Y.2d 522, 535-39, 443 N.E.2d 908, 912-15, 451 N.Y.S.2d 434, 438-41 (1982) (tracing evolution of home rule amendment to New York State's Constitution); cf. Williams v. Mayor of Baltimore, 289 U.S. 36, 40 (1933) ("A municipal corporation, created by a state for the better ordering of government, has no privileges or immunities under the Federal Constitution which it may invoke in opposition to the will of its creator."). Thus, although a state and its subdivisions may own a copyright as a matter of copyright law, it may be that Suffolk County is not permitted to do so in this instance. The question becomes whether New York's Legislature, by enacting FOIL, has ceded Suffolk County's copyright.
 
 
 27
 The text of FOIL provides no clear indication that the Legislature intended to abrogate a covered entity's copyright. FOIL provides only that "[e]ach agency shall, in accordance with its published rules, make available for public inspection and copying all records," subject to certain exceptions that are not relevant here. N.Y. PUB. OFF. LAW § 87(2) (McKinney Supp. 2001); see also id. § 89(3) (McKinney Supp. 2001) (requiring each entity subject to FOIL to provide the person requesting the record access or a written denial of access, and for those records to which it provides access, to provide, upon payment of a fee, acopy of the record to the requester). FOIL is silent as to the existence of, and the effect of requiring disclosure on, any preexisting copyright the state agency may possess. FOIL is also silent as to what may occur after a state agency discloses its records. When the current version of FOIL was enacted in 1977, there was an established recognition that certain state entities could possess a copyright, see, e.g., N.Y. JUD. LAW § 438 (McKinney 1983) (requiring that the copyright of the statement of facts, head notes and all other notes prepared by the law reporting bureau must be taken by and shall be vested in the Secretary of State); Opinion of the N.Y. Att'y Gen., 180 U.S.P.Q. 331 (1973) (citing prior opinion concluding the same). Because FOIL was enacted against such a baseline, yet did not specifically address the impact on a state agency's copyright, this silence is deafening. By the statute's plain language, the extent of the state agency's obligation is to make its records available for public inspection and copying. It is one thing to read this provision to permit a member of the public to copy a public record, but it is quite another to read into it the right of a private entity to distribute commercially what it would otherwise, under copyright law, be unable to distribute.
 
 
 28
 First American attempts to read legislative abrogation from the policies favoring broad access to governmental documents and the presumption of openness inherent in FOIL. First American fears that state agencies, armed with the weaponry of copyright infringement suits, will convert FOIL's goal of maximum access into a reality of minimum access. First American trumpets a portion of the legislative declaration introducing the law that states that "the public, individually and collectively and represented by a free press, should have access to the records of government in accordance with the provisions of this article." N.Y. PUB. OFF. LAW § 84 (McKinney 1988). This statement, in a preamble no less, may assist in the determination of the Legislature's purpose, but it certainly is not conclusive. See N.Y. STAT. § 122 (McKinney 1971) (observing that while a preamble may illuminate the statute's purpose and intent, "it enacts nothing, contains no directives, and may not be resorted to as fixing terms of the statute"). First American's reading requires a degree of inference that fails to overcome the limited scope of the obligations dictated by the plain language of the act-that a state agency must make its records available for public inspection. Moreover, First American ignores the fact that the free press or an individual seeking to use the state agency records to educate others or to criticize the state or the state agency may be protected by the Copyright Act's fair use doctrine. See 17 U.S.C. § 107; On Davis v. The Gap, Inc., 246 F.3d 152, 173-76 (2d Cir. 2001).
 
 
 29
 Both First American and the State as amicus point to the existence of pending legislation or proposals for legislative action to prove their respective contentions that the Legislature intended FOIL to preclude or not to preclude a state agency's assertion of its copyright.[5]In this situation, however, attempting to extrapolate from these bills, which have not yet been enacted, what the Legislature that enacted FOIL intended with respect to a covered entity's copyright is of questionable utility. Cf. 2B NORMAN J. SINGER, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 49.11 (6th ed. 2000) (indicating that a subsequent legislative interpretation of a statute is not conclusive of the meaning of the former statute, and may either be read to indicate that the construction of the first statute is the same as the new enactment or to provide evidence that the prior statute meant the contrary of the new enactment). At best, these bills reflect concern that FOIL does not satisfactorily address the ability or inability of a covered entity to assert its copyright. In any event, as we have stated, the plain language of FOIL suggests that it did not abrogate a covered entity's rights under the Copyright Act. Cf. Ratzlaf v. United States, 510 U.S. 135, 147 (1994) (holding that even when there "are... contrary indications in the statute's legislative history... we do not resort to legislative history to cloud a statutory text that is clear"). Therefore, we conclude that the Legislature, by enacting FOIL, did not abrogate Suffolk County's copyright.
 
 
 30
 E. What Degree of Deference, If Any, is Due Advisory Opinions by the Committee on Open Government?
 
 
 31
 In the third Committee on Open Government advisory opinion, the Executive Director of the Committee addressed whether the Department of Transportation ("DOT"), in response to a FOIL request for its "digital datasets," could require a commercial entity to license the requested records before disclosing them. While conceding that there was no judicial decision on point and that the DOT's view reconciling both FOIL and the Copyright Act arguably was correct, the Executive Director concluded after an extensive analysis that the DOT could not assert itscopyright in such a matter.[6]
 
 
 32
 Although the District Court correctly acknowledged that in some instances the opinions of the Committee are entitled to deference, that is not true here. In this case, the Committee was interpreting the effect of FOIL on rights provided by the Copyright Act-an area outside of the Committee's limited expertise as defined by statute. See N.Y. PUB. OFF. LAW § 89(1)(b)(i) & (ii). Moreover, the Committee was also engaged in statutory interpretation of FOIL and an evaluation of the policies behind the Copyright Act.
 
 
 33
 The New York Court of Appeals has indicated that deference is not appropriate in such situations. In John P. v. Whalen, the Court of Appeals held that the Committee's opinion interpreting the confidentiality of medical records pursuant to New York's Public Health Law was not entitled to deference, especially when the Committee's view conflicted with that of the Commissioner of Public Health, the officer directly concerned with that law. 54 N.Y.2d 89, 95-96, 429 N.E.2d 117, 120-21, 444 N.Y.S.2d 598, 601-02 (1981). The Court of Appeals also noted as a general proposition:
 
 
 34
 From the perspective of judicial review over agency determinations denying [FOIL] requests, committee advisory opinions carry such weight as results from the strength of the reasoning and analysis they contain, but no more.
 
 
 35
 Id. at 96, 429 N.E.2d at 121, 444 N.Y.S.2d at 602; see also Buffalo News, Inc. v. Buffalo Enter. Dev. Corp., 84 N.Y.2d 488, 493, 644 N.E.2d 277, 279-80, 619 N.Y.S.2d 695, 697-98 (1994) (rejecting Appellate Division's decision to defer to the Committee's interpretation of "agency" within the Public Officer's Law but upholding Appellate Division's order only after conducting its own statutory interpretation). The Court of Appeals has also held that deference to an agency opinion is "not required... if the issue is one of statutory interpretation, dependent on discerning legislative intent, as statutory construction is the function of the courts." Newark Valley Cent. Sch. Dist. v. Pub. Employment Relations Bd., 83 N.Y.2d 315, 320, 632 N.E.2d 443, 445, 610 N.Y.S.2d 134, 136 (1994) (holding that issue of whether a school district's duty to negotiate a smoking policy was preempted by statute or policy is a question of law that must be independently examined by courts). Because the Executive Director rested his decision on his interpretation of the Copyright Act and engaged in statutory interpretation of FOIL, New York courts would not be required to defer to his opinion, and indeed, would be required to analyze independently both FOIL and any conflicts FOIL might raise with the Copyright Act.
 
 
 36
 F. May Suffolk County Comply with FOIL and Preserve its Copyright?
 
 
 37
 FOIL emphasizes broad public distribution to further the goal of opening government and explicitly permits the copying of state agency records. While one possible reading of these statutory aspects is to permit publishers, including commercial publishers, to disseminate agency records as widely as possible, it is not the only reading. We find that the better reading, one consistent with the plain language of FOIL, is to permit Suffolk County to maintain its copyright protections while complying with its obligations under FOIL.
 
 
 38
 First, FOIL does not explicitly address what a recipient may or may not do once it receives the agency records; it provides only that the state agency must make the records available for public inspection and copying. See N.Y. PUB. OFF. LAW § 87(2). Suffolk County may comply with both these mandates while maintaining its copyright. FOIL also does not prohibit a state agency from placing restrictions on how a record, if it were copyrighted, could be subsequently distributed. Cf. Weisberg v. United States Dep't of Justice, 631 F.2d 824, 828 (D.C. Cir. 1980) ("Deciding that copyrighted materials are subject to [the federal Freedom of Information Act ("FOIA")], however, does not resolve whether any particular FOIA request should be granted, and if so, under what terms."). FOIL restricts only the fee which an agency may charge for copying or reproducing the record. N.Y. PUB. OFF. LAW § 87(1)(b)(iii). Moreover, concluding that FOIL prohibits the state agency from initiating an infringement action also prevents that agency from taking action in the event that a reproduction inaccurately portrays the content of its record. Although there are limits to a state agency's ability to restrict access to its records, see M. Farbman & Sons, Inc. v. New York City Health and Hosps. Corp., 62 N.Y.2d 75, 80, 464 N.E.2d 437, 439, 476 N.Y.S.2d 69, 71 (1984) ("FOIL does not require that the party requesting records make any showing of need, good faith or legitimate purpose...."), Suffolk County is not attempting to restrict initial access but is attempting to restrict only the subsequent redistribution of its copyrighted works. There is nothing inconsistent between fulfilling FOIL's goal of access and permitting a state agency to place reasonable restrictions on the redistribution of its copyrighted works. For example, an agency's choice to notify the recipient that a portion of the record is protected by copyright law or an agency's requirement that the recipient enter into a licensing agreement if it wishes to distribute the record commercially does not restrict initial access but only what the recipient may do once it acquires access.
 
 
 39
 It is true that Suffolk County's tax maps, because they are used in "making up the assessment rolls," N.Y. REAL PROP. TAX LAW § 503(1)(a), go to the heart of the purposes of FOIL: providing the public access to the operation or decision-making functions of government. A commercial publisher may be an effective means for distributing those records as widely as possible. One could thus attempt to draw a distinction between copyrighted materials such as the tax maps and those copyrighted materials that do not directly impact the governmental agency's decision-making. But this distinction ignores the fact that FOIL, by its text, simply does not distinguish among governmental functions that are performed in the exercise of the government's public role, its proprietary role, or as a hybrid of both roles. See N.Y. PUB. OFF. LAW § 86(4) (McKinney 1988) (defining "record" as "any information kept, held, filed, produced or reproduced by, with or for an agency... in any physical form whatsoever..."); id. § 87(2) (McKinney Supp. 2001) (enumerating specific categories of governmental records that the agency may exempt from disclosure).
 
 
 40
 To the extent First American raises fears that a state agency will use its copyright to prevent all but the most meager access to its copyrighted materials, see Henry H. Perritt, Jr., Sources of Rights to Access Public Information, 4 WM. &AMP; MARY BILL RTS. J. 179, 205 (1995), those fears are largely quelled by the legal mechanisms preventing a state agency from doing so. The assertion of a copyright does not fall within FOIL's limited exceptions permittingan agency to deny access. See N.Y. PUB. OFF. LAW § 87(2); id. § 89(2)(b) (McKinney Supp. 2001).
 
 
 41
 Suffolk County also cannot restrict the subsequent dissemination of its work completely. First, the Copyright Act "protect[s] only the form of expression and not the ideas expressed." New York Times Co. v. United States, 403 U.S. 713, 726 n.* (1971) (Brennan, J., concurring); see also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 348-49 (1991) (compilation of facts, if sufficiently original, is entitled to copyright protection although the facts contained therein are not); Attia v. Soc'y of New York Hosp., 201 F.3d 50, 54 (2d Cir. 1999) ("A copyright thus protects not the author's ideas, but only her expression of them."), cert. denied, 121 S. Ct. 109 (2000). Second, the fair use doctrine, codified in section 107 of the Copyright Act, strikes a balance between the rights of a copyright holder and the interest of the public in disseminating information. 17 U.S.C. § 107 (The "fair use of a copyrighted work... for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright."). The fair use doctrine "permits [and requires] courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 577 (1994) (internal quotation marks omitted).
 
 
 42
 After weighing the policy interests advocated by both sides, we find that these interests favor permitting state agencies to maintain their protections under the Copyright Act while complying with FOIL. Thus, it is possible for Suffolk County to comply with its obligations under FOIL while preserving its rights under the Copyright Act.
 
 
 43
 G. Are Suffolk County's Tax Maps in the Public Domain from Inception?
 
 
 44
 First American also contends that, even if we find that Suffolk County may assert its copyright while complying with its obligations under FOIL, we cannot do so in this case because Suffolk County's tax maps should be viewed as being in the public domain, and, hence, uncopyrightable. While conceding below that this is a matter of first impression, First American argues that the tax maps are sufficiently analogous to statutes and judicial opinions, which courts have found may not be copyrighted because they are in the public domain since their inception. See, e.g., Banks v. Manchester, 128 U.S. 244 (1888) (state judicial opinion); Howell v. Miller, 91 F. 129 (6th Cir. 1898) (state statutes); Bldg. Officials & Code Adm. v. Code Tech., Inc., 628 F.2d 730, 735 (1st Cir. 1980) (hereinafter "BOCA") (suggesting but not deciding that state-promulgated regulations modeled on a privately developed code are in the public domain).
 
 
 45
 The determination that no one may own a copyright in statutes and opinions arises not from a specific provision of the Copyright Act, but from a "judicial gloss" on the Act. BOCA, 628 F.2d at 735. In Banks, for example, the Supreme Court held that as a matter of public policy judges may not own a copyright in the fruits of their judicial labor. See 128 U.S. at 253. Because judges "receive from the public treasury a stated annual salary... and can themselves have no pecuniary interest or proprietorship, as against the public at large," they cannot own a copyright. Id. Considerations ofdue process and fair notice also motivated the Banks Court: the "whole work done by the judges constitutes the authentic exposition and interpretation of the law, which, binding every citizen, is free for publication to all.... " Id. If judges owned a copyright in their opinions, theoretically, they could restrict dissemination of the law. Thus, two considerations influence whether a particular work may be properly deemed in the public domain: (1) whether the entity or individual who created the work needs an economic incentive to create or has a proprietary interest in creating the work and (2) whether the public needs notice of this particular work to have notice of the law. See Practice Mgmt. Info. Corp. v. American Med. Assoc., 121 F.3d 516, 518-19 (9th Cir. 1997); BOCA, 628 F.2d at 734-35. We consider each factor in turn.
 
 1. Incentive to Create
 
 46
 Copyright benefits the public by providing an incentive to stimulate artistic creativity through the grant of a temporary monopoly to a copyright owner. See Twentieth Century Music Corp. v. Aiken, 422 U.S. 151, 156 (1975). The Banks Court found such an incentive for the creation of judicial opinions unnecessary. But Banks, to us, represents more than the simple syllogism concluding that the public owns works produced by government employees merely because it pays their salaries. Rather, Banks is properly read as requiring a determination whether the particular governmental entity or employee has adequate incentive to create the work absent copyright protections. See Practice Mgmt., 121 F.3d at 518 ("The copyright system's goal of promoting the arts and sciences by granting temporary monopolies to copyrightholders was not at stake in Banks because judges' salaries provided adequate incentive to write opinions."); cf. Legi-Tech, Inc. v. Keiper, 766 F.2d 728, 735 (2d Cir. 1985) (recognizing, although rejecting in the specific context, the potential that the profit motive created by copyright may provide incentive for governmental creation). Judges and legislators do not need additional economic incentives to, respectively, write opinions or enact legislation.
 
 
 47
 Many works of government, however, due to their expense, may require additional incentives in order to justify their creation. See Kidwell, 1989 WISC. L. REV. at 1023; David S. Levitt, Copyright Protection for United States Government Computer Programs, 40 IDEA: THE JOURNAL OF LAW AND TECHNOLOGY 225, 247-50 (2000). As the amici contend and as the sponsor for the GIS Bill advocates in his Sponsor's Memorandum, see supra note 5, GIS may well be such an example. Thus, we are unable to declare a general rule that works by state governmental authors are automatically in the public domain from their inception. Some of the evidence relevant in determining whether the tax maps are original will also be relevant in determining whether Suffolk County required an additional incentive to create those maps. For example, if the existence and content of Suffolk County's maps are purely dictated by law, it is likely that Suffolk County needed no additional incentive to create them. As we have indicated that Suffolk County is entitled to present evidence whether its tax maps are original, see supra section II.C., we cannot say as a matter of law whether the tax maps are such that no additional incentive for their creation is necessary. What we can say, however, is that Suffolk County is entitled to present evidence whether it needed the additional incentives provided by copyright law to create its maps. It is for the District Court in the first instance to determine what additional incentives, ifany, were needed for the maps' creation and for the manner by which Suffolk County chose to express the data contained therein.
 
 2. Notice
 
 48
 Due process requires that before a criminal sanction or significant civil or administrative penalty attaches, an individual must have fair warning of the conduct prohibited by the statute or the regulation that makes such a sanction possible. See, e.g., McBoyle v. United States, 283 U.S. 25, 27 (1931) (criminal punishment); United States v. One 1973 Rolls Royce, V.I.N. SRH-16266, 43 F.3d 794, 819 (3d Cir. 1994) (applying rule of lenity to civil forfeiture provisions that are punitive and quasi-criminal in nature); Gen. Elec. Co. v. EPA, 53 F.3d 1324, 1328-29 (D.C. Cir. 1995) (administratively assessed fine).
 
 
 49
 Here, the tax maps themselves do not create the legal obligation to pay property taxes but are merely a means by which the government assesses a pre-existing obligation. The "fair warning" required under the Due Process Clause is satisfied through the notice provided by the statute that establishes the obligation to pay property taxes. There is no allegation that notice of this statute is not generally available. See BOCA, 628 F.2d at 734 ("So long as the law is generally available for the public to examine, then everyone may be considered to have constructive notice of it."). Moreover, there is no allegation that any individual required to pay the applicable property tax has any difficulty in obtaining access to either the law or the relevant tax map, for Suffolk County is required by FOIL to disclose such a map on request. See Practice Mgmt., 121 F.3d at 519; Veeck v. Southern Bldg. Code Cong. Int'l, Inc., 241 F.3d 398, 403 (5th Cir. 2001); Texas v. West Publ'g Co., 882 F.2d 171, 177 (5th Cir. 1989), cert. denied, 493 U.S. 1058 (1990). Notice concerns simply are not present here.
 
 
 50
 In sum, on the record before us, we cannot conclude as a matter of law that Suffolk County's tax maps are in the public domain since their inception. We do conclude that Suffolk County has stated a valid claim upon which relief could be granted. Therefore, Suffolk County is entitled to present evidence in support of its copyright infringement claim.
 
 CONCLUSION
 
 51
 For the foregoing reasons, we conclude that the District Court erred in dismissing Suffolk County's complaint. We hold that the New York State Legislature, by enacting FOIL, did not abrogate Suffolk County's copyright in its tax maps. We conclude that it is possible for Suffolk County to comply with its obligations under FOIL while preserving its rights under the Copyright Act. We find that Suffolk County sufficiently alleged that its tax maps possess enough originality to withstand a motion to dismiss for failure to state a claim. Finally, we find, at least on the record before us, that Suffolk County's official tax maps cannot, as a matter of law, be deemed to be in the public domain since their inception. Accordingly, we vacate the order of the District Court and remand for further proceedings consistent with this opinion. In light of this disposition, we dismiss First American's cross-appeal as moot.
 
 
 
 NOTES:
 
 
 [1]
 On January 1, 1998, First American acquired the business of Experian Information Solutions, Inc. ("Experian"), including the selling of information concerning real property ownership alleged in the complaint. At oral argument before this Court, counsel for First American confirmed that prior to its acquisition of Experian, Experian had acquired TRW Redi Property Data, the remaining defendant.
 
 
 [2]
 FOIL specifically obliges each "agency" to provide access to its records. N.Y. PUB. OFF. LAW § 87(2) (McKinney Supp. 2001). An "agency" includes "any state or municipal department, board, bureau, division, commission, committee, public authority, public corporation, council, office or other governmental entity performing a governmental or proprietary function for the state or any one or more municipalities thereof, except the judiciary or the state legislature." N.Y. PUB. OFF. LAW § 86(3) (McKinney 1988). In this opinion, we refer to those agencies covered by FOIL as either "state agencies" or "covered entities."
 
 
 [3]
 It does not appear that either party brought this new advisory opinion to the District Court's attention before it filed County of Suffolk I.
 
 
 [4]
 GIS is a computer system capable of assembling, storing, manipulating, and displaying geographically referenced information that may be used to make multifaceted interrelationships among many types of data visually intelligible. GIS is used in a wide range of applications, including economic development and environmental management.
 
 
 [5]
 First American included in its appendix three bills that were before the 223rd Legislature-two to amend the Executive Law to foster GIS and to provide for licensing of GIS records, and one to amend FOIL to permit state agencies to charge a reasonable fee to persons who acquire GIS records pursuant to a FOIL request. Because oral argument was held after that legislative session, we take judicial notice of the introduction of a similar bill seeking to amend FOIL now before the 224th Legislature. Currently pending before the Legislature is a bill, introduced on February 28, 2001, to amend FOIL in order to permit state and municipal agencies to license GIS and to charge persons a reasonable fee (not to exceed the fair market value of the record) when those persons acquire GIS records through a FOIL request. See A 5778, 2001 Leg., 224th Sess. (N.Y. 2001) (hereinafter "GIS Bill"); Sponsor's Mem., Assemb. Mem. in Support, B. No. A. 5778, available at http://leginfo.state.ny.us:82/INDEX1.html. In the Sponsor's Memorandum, the sponsor explained that because FOIL permits agencies to charge only for the cost of reproducing requested materials and does not permit agencies to place restrictions upon future dissemination of that material, local governments have become unwilling to invest further in developing GIS because GIS data, requested and disclosed pursuant to FOIL, was later resold at a high profit. Other entities, such as utilities, the sponsor opined, were becoming "increasingly reluctant" to share GIS data with the government for fear that their data will end up in the public domain.
 The Committee on Open Government recommended that the State Legislature "take action to waive the ability of the government agencies in New York to claim copyright protection," except "where the record reflects scientific or academic research." State of New York, Department of State, Committee on Open Government, 2000 Report to the Governor and the State Legislature on New York State's Open Government Laws and Related Issues at 3 (emphasis added). This recommendation appears to have been incorporated in a separate bill, introduced on March 27, 2001, to amend FOIL in order to require that all public records that are, or could reasonably be made, available be accessible on the Internet. See A 7778-B, 2001 Leg., 224th Sess. (N.Y. 2001); Sponsor's Mem., Assemb. Mem. in Support, B. No. A. 7778-B, available at http://leginfo.state.ny.us:82/INDEX1.html. In the Sponsor's Memorandum, the sponsor of this bill indicated that one of the bill's purposes was "to ensure that the Freedom of Information Law maximizes the accessibility of records." Both of these bills have been referred to the Committee on Governmental Operations.
 
 
 [6]
 Despite the Executive Director's conclusion that the state agency could not assert its copyright due to the inherent purposes of FOIL, the Committee subsequently recommended that the New York State Legislature "take action to waive the ability of government agencies in New York to claim copyright protection." See supra note 5.